DORA R. BARADA, APPELLANT, V. RONALD E. SORENSEN,
COMMISSIONER OF LABOR, STATE OF NEBRASKA, AND BEHLEN
MFG. CO., APPELLEES.
383 N.W.2d 799

Filed March 28, 1986.   No. 85-506.

Joseph S. Ramirez, for appellant.

Laureen Van Norman, for appellee Sorensen.

BOSLAUGH, WHITE, and SHANAHAN, JJ., and BRODKEY, J.,
Retired, and COLWELL, D.J., Retired.

WHITE, J.

This is an appeal from an order of the district court for Platte County which affirmed the decision of the Nebraska unemployment compensation appeal tribunal. The tribunal determined that the employee, Dora R. Barada, was terminated for misconduct within the meaning of the Employment Security Law, Neb. Rev. Stat. §§ 48-601 to 48-669 (Reissue 1984), and that the employee was disqualified from receiving benefits for a period of 7 weeks.

"In any judicial proceeding under sections 48-638 to 48-640 the court shall consider the matter de novo upon the record." § 48-639. "[I]t is our duty to retry the issues of fact involved in the findings complained of and reach an independent conclusion thereof." *Heimsoth v. Kellwood Co.*, 211 Neb. 167, 168, 318 N.W.2d 1, 2 (1982). In our review, however, we keep in mind that where there is a dispute of fact the district court observed the demeanor of the witness and accepted one version

of the facts rather than the other.

We accept the following version of the facts of this case. Appellant, Dora Barada, is a female, age 59, and had been employed by the Behlen Mfg. Co. at its Columbus, Nebraska, plant since May of 1974 until her discharge on September 14, 1984, slightly more than 10 years.

In May of 1984 the Behlen Mfg. Co. had a change of ownership from being an apparently wholly owned subsidiary of the Wickes Companies, Inc., to private ownership. During the prior ownership by Wickes, a companywide retirement program was in effect. The new ownership determined to put in place a new retirement program. Originally, Behlen management fixed the period from August 1 through 15, 1984, as the enrollment period. The period was extended to allow persons to examine the written plan.

It was clear to all employees that among the several options available, retention of the old retirement plan was not one of the options. The options available to be examined were the subject of three informational meetings by the Behlen management. An opportunity was given to individual employees to examine the written plan, and to Barada to have the plan examined by a private attorney if she desired. The options available were that (1) Behlen would contribute 2 percent of the employee's annual earnings regardless of contribution or noncontribution by the employee, (2) the employee could contribute from 0 to 6 percent to the plan, (3) the employer would match 50 percent of the elective contribution percentage of employee's pay, and (4) the employee could choose not to participate at all. No benefits were available to an employee unless one of the options was exercised.

As of the date of the discharge, Barada refused to exercise any of the three options to participate or to execute a document signifying the fourth option, i.e., not to participate at all.

We are satisfied that the employer afforded Barada information about the plan and an opportunity to examine the written plan personally or by counsel. Though advised of that right at least some weeks prior to the discharge date, no effort by Barada to examine the plan was made, except over a half

hour break. Although she advised Behlen management that she wished to have her attorney examine the plan, she had not, as of September 14, 1984, contacted an attorney. When asked by Behlen management as to when she expected to contact an attorney, she answered, "Now, don't pin me down."

Management testified that it was essential that all employees indicate which of the four options (three participation, one nonparticipation) they desired. Counsel apparently advised management of a potential liability to the estate of former employees or of retired employees if no written record of election existed, and therefore recommended that each employee be required to execute a document so signifying.

At the fateful September 14 meeting, employee Barada refused to sign anything, after notice that such refusal would result in her discharge.

At issue in this appeal is whether the refusal to designate a plan or nonplan is "misconduct" within the meaning of § 48-628(b) sufficient to disqualify Barada from benefits for not more than 10 weeks. In *Bristol v. Hanlon*, 210 Neb. 37, 41, 312 N.W.2d 694, 696 (1981), *overruled on other grounds*, *Heimsoth v. Kellwood Co., supra*, we recited the definitions of misconduct used by other courts and adopted as a definition "a deliberate, willful, or wanton disregard of an employer's interest or of the standards of behavior which the employer has a right to expect of his employees, or carelessness or negligence of such a degree or recurrence as to manifest culpability, wrongful intent, or evil design."

We do not accept, as the district court did not, the possibility of a limited understanding by Barada of the options offered or their effect, if any, on previous pension plans, in view of the extended efforts of management to explain the plans and the availability of the plan to independent counsel. Nor do we accept that management, once prepared to accept a refusal to sign as an exercise of the nonparticipation option, is estopped from requiring a signed designation, especially where the reason (advice of management counsel) was explained to Barada.

We conclude that the failure to designate a plan was

misconduct. Therefore, the decision of the district court is affirmed.

AFFIRMED.