BENARD SMITH, APPELLANT, V. RONALD E. SORENSEN, COMMISSIONER OF LABOR, STATE OF NEBRASKA, AND CITY OF OMAHA, A MUNICIPAL CORPORATION, APPELLEES.

386 N.W.2d 5

Filed May 2, 1986.   No. 84-940.

Sheri E. Long, for appellant.

Paul D. Kratz, for appellee Sorensen.

Herbert M. Fitle, Omaha City Attorney, and Kent N. Whinnery, for appellee City of Omaha.

BOSLAUGH, CAPORALE, SHANAHAN, and GRANT, JJ., and BRODKEY, J., Retired.

BRODKEY, J., Retired.

Benard Smith appeals from an order of the district court for Douglas County affirming a decision of the Nebraska Department of Labor Appeal Tribunal, which affirmed a decision of the Nebraska Department of Labor, division of employment, which had ordered a 9-week reduction in Smith's unemployment benefits. Smith's unemployment was caused by his dismissal from the public works department of the City of Omaha, which dismissal was affirmed by the personnel board of the City of Omaha. We affirm the district court's order.

By way of background, it appears that Smith commenced working for the City of Omaha in 1963, and his most recent position with the city was that of a semiskilled laborer. His duties included the inspection, repair, and replacement of road barricades. It was Smith's duty to keep certain records in connection with his employment, including a logsheet indicating his activity during working hours and a book indicating where barricades had been placed and which barricades had been repaired.

During November 1982, it appears that Smith's supervisors had received numerous complaints concerning the frequent parking of the truck used by Smith at a 27th Street address, during working hours, for periods of 15 to 45 minutes. These stops were not recorded on Smith's records. On November 29,

1982, Smith's immediate supervisor and the city's assistant traffic engineer followed Smith for 3 1/2 hours. Smith's activities during this period did not conform to his notations on his logsheet. As a result, he was terminated for falsifying city records. This termination, however, was later reduced to a 6-day suspension. The assistant traffic engineer testified that at that time he warned Smith that further failure to make correct entries on his logsheet could result in the termination of his employment.

Smith's employer continued to receive complaints about Smith, however, and therefore the assistant traffic engineer again followed Smith, on December 29, 1982. Smith had again parked at the 27th Street address, but Smith's logsheet for that evening listed no entries for over 2 hours which included the period in question. On January 30, 1983, the city's labor relations director followed Smith and found that he made no work stops during a period of time for which Smith's records showed four work stops.

In addition, evidence revealed that on January 25, 1983, Smith attempted to collect a personal debt during his working hours, but his logsheet did not reflect this stop.

Smith was subsequently terminated following a suspension, such dismissal being for "falsifying city records" and "offensive conduct toward the public." *Smith v. City of Omaha*, 220 Neb. 217, 369 N.W.2d 67 (1985). It appears that according to the collective bargaining agreement between the City of Omaha and Smith's union, both "falsifying city records" and "offensive conduct toward the public" are grounds for dismissal. Smith, it appears, appealed to the City of Omaha's personnel board, which affirmed his termination.

In April 1983 the Nebraska Department of Labor, division of employment, notified Smith that he would not receive unemployment benefits for a 9-week period because he conducted personal business on company time and did not perform according to standards rightly expected of him by the city. Smith then appealed to the Nebraska Appeal Tribunal, Department of Labor. The issue in that appeal was whether there was sufficient evidence to disqualify Smith from 9 weeks' unemployment benefits pursuant to Neb. Rev. Stat.

§ 48-628(b) (Cum. Supp. 1982). Section 48-628(b) of the Nebraska Employment Security Law provides that one shall be disqualified for receiving benefits for "the week in which he or she has been discharged for misconduct connected with his or her work . . . for not less than seven weeks nor more than ten weeks which immediately follow such week, as determined by the commissioner . . . according to the seriousness of the misconduct . . . ." The appeal tribunal affirmed the Department of Labor's decision, reasoning that under the Employment Security Law, the 9-week disqualification was proper because Smith was guilty of "misconduct," having deliberately disregarded the standards of behavior which the city, as his employer, had a right to expect.

Smith then appealed to the district court on the basis that his "misconduct, if any, was not a willful, deliberate disregard of the employer's best interests or of the standards of behavior which the employer [had] a right to expect of its employees." The district court affirmed the Nebraska Appeal Tribunal's decision.

The appeal to this court then followed. Two issues are raised: (1) Whether Smith was guilty of the "misconduct" required to invoke § 48-628(b); and (2) Whether the district court erred in finding that the labor agreement was irrelevant to the State's determination of the issue of misconduct. As previously noted above, this court has previously reviewed the basic facts of this case; and in doing so, held that the city had the authority to discharge Smith for whatever reason it chose. *Smith v. City of Omaha, supra.* It appears to be the general rule that state legislatures possess the power to determine procedures to be followed in appealing actions arising under *unemployment* laws. See 81 C.J.S. *Social Security* § 157 (1977). Under the Nebraska statutes, appeals to this court under the provisions of the Employment Security Law are reviewed de novo on the record (Neb. Rev. Stat. §§ 48-601 to 48-669 (Reissue 1984)). It is therefore clear that the scope of review in cases such as this is to "retry the issues of fact involved in the findings complained of and reach an independent conclusion thereof." *Snyder Industries, Inc. v. Otto*, 212 Neb. 40, 44, 321 N.W.2d 77, 80 (1982). See, also, *Stuart v. Omaha Porkers*, 213 Neb. 838, 331

N.W.2d 544 (1983); *Heimsoth v. Kellwood Co.*, 211 Neb. 167, 318 N.W.2d 1 (1982); § 48-640 (Supp. 1985).

It is necessary to first determine whether Smith was guilty of "misconduct" as that term is used in § 48-628(b). The Employment Security Law does not define the term "misconduct." When an unemployment compensation statute neglects to define a specific term, it then becomes necessary to resort to judicial interpretation of that term. 81 C.J.S., *supra* § 158. Our court has frequently and consistently defined the term "misconduct" as it appears in § 48-628(b). In *McCorison v. City of Lincoln*, 215 Neb. 474, 475-76, 339 N.W.2d 294, 295-96 (1983), we stated:

> We have previously defined misconduct as referred to in § 48-628(b). Specifically, in *Stuart v. Omaha Porkers*, 213 Neb. 838, 840, 331 N.W.2d 544, 546 (1983), we recently said: "While the term 'misconduct' is not specifically defined in the statute, it has generally been defined to include behavior which evidences (1) wanton and willful disregard of the employer's interests, (2) deliberate violation of rules, (3) disregard of standards of behavior which the employer can rightfully expect from the employee, or (4) negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard of the employer's interests or of the employee's duties and obligations." See, also, *Snyder Industries, Inc. v. Otto*, 212 Neb. 40, 321 N.W.2d 77 (1982); *Bristol v. Hanlon*, 210 Neb. 37, 312 N.W.2d 694 (1981).

We conclude that the findings of the Nebraska Department of Labor that Smith failed to perform according to standards rightfully to be expected of him by his employer, the City of Omaha, were correct. Moreover, we agree with the appeal tribunal that Smith deliberately disregarded those standards and therefore is guilty of "misconduct" under § 48-628(b). We agree that what conduct constitutes "misconduct" in a given case is a fact question. Generally, a single act is not sufficient to fall within the definition of "misconduct"; nor is a series of acts, for example, if the employer tolerated those actions without warning the employee of possible consequences. See 81 C.J.S., *supra* § 224. While there do not appear to be any

Nebraska cases squarely on point from a factual standpoint, nevertheless it appears that cases from other jurisdictions have been based upon very similar facts and support our decision in this case. For example, in *Raiskin Unempl. Compensation Case*, 202 Pa. Super. 60, 195 A.2d 147 (1963), an employee was found to have breached her duty to her employer for purposes of the Pennsylvania Unemployment Compensation Law. The employee did so by her failure to comply with office procedures and work hours, as well as her failure to correct her infractions pursuant to her employer's warning. In *Sopko Unempl. Compensation Case*, 168 Pa. Super. 625, 82 A.2d 598 (1951), the court explained that "willful misconduct" under the same Pennsylvania statute interpreted in the *Raiskin* case is readily constituted by the "inexcusable and unexplained failure, neglect, or refusal of claimant to perform the duties assigned to him, especially where he had been warned relative to his conduct by his employer . . . ." *Sopko, supra* at 628, 82 A.2d at 599. Applying the above interpretations of "willful misconduct" to the present case, it is clear that Smith's numerous incidents of falsifying entries on his logsheets, even after receiving two warnings and one suspension for the same infraction, clearly constitute "misconduct" under § 48-628(b).

Smith contends that his limited reading ability, a result of his attaining only a fifth-grade education level, as well as a visual impairment, renders his misconduct, if any exists, unintentional. We reject this contention, however, and agree with the appeal tribunal that Smith knew enough to request the assistance of others when he needed to read or understand things and that the record did not indicate that Smith had difficulty distinguishing between right and wrong. In fact, we note that Smith possessed reading and writing abilities sufficient to note locations on his logsheet which he never even visited, as least at the times noted.

We have required that in order for a violation of an employer's rules to constitute misconduct, it is necessary that the rule be a reasonable one. In other words, the rule must " 'bear a reasonable relationship to the employer's interests . . . .' " *Snyder Industries, Inc. v. Otto,* 212 Neb. 40, 43-44, 321 N.W.2d 77, 80, quoting *Gregory v. Anderson,* 14 Wis. 2d 130,

109 N.W.2d 675 (1961). Certainly, accurate recordkeeping by a municipal employee who is required to document frequent work stops and the work accomplished during those stops bear a reasonable relationship to the interests of the employer, the city public works department.

We believe the labor contract is irrelevant to the determination of the existence of misconduct, as it appears that, generally, private labor agreements may not render an unemployment compensation law ineffectual. See, *Gianfelice Unempl. Compensation Case*, 396 Pa. 545, 153 A.2d 906 (1959); *Soricelli v. Board of Review, &c.*, 46 N.J. Super. 299, 134 A.2d 723 (1957). This conclusion is inferentially supported in Nebraska by *Strauss v. Square D Co.*, 201 Neb. 571, 270 N.W.2d 917 (1978). In *Strauss* the use of a collective bargaining agreement was not permitted to determine whether an employee was guilty of misconduct under § 48-628(b). However, the agreement was used to determine whether the employer violated the applicable employment rule.

A review of the record convinces us that the evidence supporting the determination that Smith's actions constituted misconduct is supported not merely by "competent evidence" but, rather, by overwhelming evidence, and we therefore affirm the action of the district court.

AFFIRMED.