CHARLES O'KEEFE, APPELLANT, V. TABITHA, INC., AND RONALD E. SORENSEN, COMMISSIONER OF LABOR, STATE OF NEBRASKA, APPELLEES.

399 N.W.2d 798

Filed January 23, 1987.   No. 86-071.

Noel S. DeKalb, for appellant.

Jerry L. Pigsley of Nelson & Harding, for appellee Tabitha, Inc.

Laureen Van Norman, for appellee Sorensen.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

SHANAHAN, J.

Charles O'Keefe appeals the judgment of the district court for Lancaster County, affirming the decision of the Nebraska Appeal Tribunal which had determined that, on account of misconduct as an employee of Tabitha, Inc., O'Keefe was disqualified from unemployment benefits for a period of 9 weeks, according to Neb. Rev. Stat. § 48-628 (Reissue 1984), which provides:

> An individual shall be disqualified for benefits:
>
> . . . .
>
> (b) For the week in which he or she has been discharged for misconduct connected with his or her work, if so found by the commissioner, and for not less than seven weeks nor more than ten weeks which immediately follow such week, as determined by the commissioner in each case according to the seriousness of the misconduct; *Provided,* that if the commissioner finds that such individual's misconduct was gross, flagrant, and willful, or was unlawful, the commissioner shall totally disqualify such individual from receiving benefits with respect to wage credits earned prior to such misconduct.

Tabitha operates a nursing home, supplying services to as many as 236 dependent residents of the home. Since 1983, Tabitha has employed O'Keefe in dietary services and, in September of 1984, adopted a written "no fault attendance policy" which was distributed to its employees. Under such

policy, an employee's absence from work, regardless of cause, was charged against the total number of absences which constituted a basis for terminating employment at Tabitha. According to the Tabitha policy adopted in 1984, two absences within a 2-month period resulted in a first notice to an employee; four absences within 6 months, a second notice; and six absences within 10 months, a third and final notice. Six absences within a 12-month period were a cause for Tabitha's dismissal of an employee.

Before adoption of the written policy in 1984, O'Keefe was sick and absent from employment 4 days in January of 1984, 2 days in February, 2 days in March, 3 in April, 2 in May, 2 in July, and 6 in August. On January 21, 1984, some unidentified person called Tabitha on behalf of O'Keefe and reported that O'Keefe would not report for work. On May 30, O'Keefe called in and stated he would not report for work, since he was working on his automobile. O'Keefe failed to call in or show up for work on August 19. After adoption of the written policy and between September 1, 1984, and February 22, 1985, O'Keefe missed 15 days on account of sickness and missed an additional 3 nonconsecutive days for reasons other than illness. On March 4, 1985, O'Keefe called in after a shift had commenced and informed his supervisor that he was unable to report for work. O'Keefe had been warned about his absences and was dismissed from employment on March 5.

In an appeal regarding disqualification of benefits under § 48-628(b), the Supreme Court retries factual questions de novo on the record and reaches conclusions independent of those reached by the district court. See, *Heimsoth v. Kellwood Co.*, 211 Neb. 167, 318 N.W.2d 1 (1982); *McClemens v. United Parcel Serv.*, 218 Neb. 689, 358 N.W.2d 748 (1984); *Smith v. Sorensen*, 222 Neb. 599, 386 N.W.2d 5 (1986).

For his first assignment of error, O'Keefe argues that the evidence does not sustain a disqualification from benefits under § 48-628(b).

As this court expressed in *McCorison v. City of Lincoln*, 215 Neb. 474, 475-78, 339 N.W.2d 294, 295-96 (1983):

We have previously defined misconduct as referred to in § 48-628(b). Specifically, in *Stuart v. Omaha Porkers*, 213

Neb. 838, 840, 331 N.W.2d 544, 546 (1983), we recently said: "While the term 'misconduct' is not specifically defined in the statute, it has generally been defined to include behavior which evidences (1) wanton and willful disregard of the employer's interests, (2) deliberate violation of rules, (3) disregard of standards of behavior which the employer can rightfully expect from the employee, or (4) negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard of the employer's interests or of the employee's duties and obligations." [Citations omitted.]

. . . .

An employer has a right to expect an employee to be on the job except when otherwise excused and as authorized by the employment rules. The City, through its personnel code, provided for certain authorized times to be absent from work, including sick leave with pay, funeral leave with pay, and injury leave with pay. However, the absences, as reflected by the record, were neither explained nor justified by McCorison.

In an extensive annotation found at 41 A.L.R.2d 1158, 1160 (1955), the author notes: "Under statutes providing that unemployment benefits are to be denied or delayed to one whose unemployment results from discharge for wilful misconduct, it has been held or recognized that persistent or chronic absenteeism, at least where the absences are without notice or excuse, and are continued in the face of warnings by the employer, constitutes wilful misconduct within the statute." In *Keefer v. Com., Unemployment Comp. Bd. of Rev.*, 47 Pa. Commw. 281, 407 A.2d 934, 935 (1979), the Pennsylvania Commonwealth Court said: "However, excessive unjustified absenteeism can constitute willful misconduct because it may evidence a wanton and willful disregard of the employer's interest or a disregard of the standards of behavior which an employer can rightfully expect from his employee."

. . . .

"No aspect of contract of employment is more basic

than the right of the employer to expect employees will appear for work on the day and at the hour agreed upon. Persistent failure to honor that obligation evinces a substantial disregard for the employer's interest and may justify a finding of misconduct connected with the employment.

"Ample authority may be found in other jursidictions to the effect that persistent or chronic absenteeism without notice or excuse in the face of warnings from the employer constitutes such misconduct as requires a denial of unemployment compensation. [Citations omitted.]" [Citing *Wallace v. Stewart*, 559 S.W.2d 647 (Tenn. 1977).]

Also, as observed by this court in *Stuart v. Omaha Porkers*, 213 Neb. 838, 840, 331 N.W.2d 544, 546 (1983):

In common experience, the presence of or at least the preshift notice of absence of a workman is essential to the efficient operation of an assembly line production system and is a legitimate interest of the employer. The absence without notice, taken with previous warning, was sufficient to find that Stuart was discharged for willful misconduct.

See, also, *Strauss v. Square D Co.*, 201 Neb. 571, 270 N.W.2d 917 (1978).

In the case before us, Tabitha had an understandably strict schedule to maintain in view of the services to be provided to residents of a nursing home. While absences due to illness may not constitute an employee's misconduct, we conclude that an employee's chronic and excessive absenteeism demonstrates a wanton and willful disregard of the employer's interests for the purpose of § 48-628(b). See *McCorison v. City of Lincoln, supra.*

As a second assignment of error, O'Keefe contends that Tabitha violated its written policy regarding warnings to be given to its employees before termination of employment. In this regard O'Keefe relies upon *Morris v. Lutheran Medical Center*, 215 Neb. 677, 340 N.W.2d 388 (1983). *Morris* involved an employee's suit on an employment contract and the necessity of pleading and proving a deviation from the employer's "policies and procedures" which were incorporated into the

contract of employment. In this case, however, O'Keefe has not brought suit to enforce whatever may be his rights under his employment contract with Tabitha. O'Keefe has brought the action to collect unemployment benefits authorized by statute. *Smith v. Sorensen*, 222 Neb. 599, 386 N.W.2d 5 (1986), contains the rule applicable for disposing of O'Keefe's second assignment of error. *Smith v. Sorensen* teaches that a "labor contract is irrelevant to the determination of the existence of misconduct, as it appears that, generally, private labor agreements may not render an unemployment compensation law ineffectual." *Id.* at 605, 386 N.W.2d at 9. See, also, *Strauss v. Square D Co., supra.*

As his third and final assignment of error, O'Keefe claims it was improper to consider his work record as such existed before Tabitha adopted its written attendance policy in September 1984. We disagree. Under the circumstances, we find it is proper to consider an employee's work history as a course of conduct and behavior which may constitute "misconduct" necessary for disqualification from unemployment compensation. See *Roll v. City of Middleton*, 105 Idaho 22, 665 P.2d 721 (1983).

Upon our de novo review of the record in this case, we find misconduct within the meaning of § 48-628(b) has disqualified O'Keefe from unemployment compensation for a period of 9 weeks, as determined by the district court. We, therefore, affirm the judgment of the district court.

AFFIRMED.