GREAT PLAINS CONTAINER COMPANY, APPELLANT, V. JOSEPH C. HIATT AND RONALD E. SORENSEN, NEBRASKA COMMISSIONER OF LABOR, APPELLEES.

407 N.W.2d 166

Filed June 5, 1987.    No. 86-084.

Timothy D. Loudon of Tate and Alden Law Firm, P.C., for appellant.

Laureen Van Norman, for appellee Sorensen.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

Great Plains Container Company (hereafter Great Plains) appeals from an order of the district court for Adams County affirming a decision of the Nebraska Department of Labor Appeal Tribunal. The tribunal had reversed the determination of a claims deputy of the Nebraska Department of Labor ordering a 9-week disqualification of claimant, Joseph C. Hiatt, from unemployment benefits. Claimant had been terminated from his employment with Great Plains for excessive wage garnishments. The appeal tribunal held that claimant's conduct did not constitute misconduct within the meaning of the Nebraska Employment Security Law, Neb.

Rev. Stat. §§ 48-601 to 48-669 (Reissue 1984). The district court for Adams County affirmed. Great Plains appeals to this court, alleging that the district court erred in ruling the claimant's conduct did not constitute misconduct within the meaning of the Nebraska Employment Security Law and in requiring the company to establish "gross" misconduct where only ordinary misconduct is alleged. For the reasons hereafter stated, the judgment of the district court is affirmed.

At the hearing before the district court the record before the appeal tribunal was introduced in evidence and additional testimony was taken, as authorized by § 48-639. The record shows that the claimant began working for Great Plains in August of 1983 at a salary of $3.75 per hour. When he was hired, claimant was given a copy of the company's employee handbook. The handbook provides in part that "[i]t is expected that each employee will handle his/her own financial affairs. Great Plains discourages any pay garnishments to creditors." At the time of his termination of employment the claimant was a press operator earning $5.25 per hour. In the company's evidence, claimant was described as a well-skilled employee.

The claimant's problems with the company began when his former wife instituted garnishment proceedings in November of 1984 for unpaid court-ordered child support payments. The claimant met with company supervisors regarding the garnishment in January of 1985. It was the company's policy to interview the employee regarding garnishments, explain the company's practice concerning garnishments, and to extend to employees the opportunity to straighten out their financial affairs. The child support garnishment was released in February of 1985.

The company received a summons in garnishment in March of 1985. This summons was based on a judgment obtained by a collection agency seeking to enforce judgment for general debts owed by claimant. The claimant was again called to a meeting, where he was advised of the company rules and warned that if his affairs were not put in order, his employment would be terminated. A company witness testified that claimant "simply shrugged his shoulders" and left the meeting. The company received another summons in garnishment from the same

collection agency in early April 1985. The claimant was fired on April 11, 1985, and filed a claim for unemployment benefits with the Nebraska Department of Labor.

Appeals under the provisions of §§ 48-601 to 48-669 are reviewed de novo on the record made in the district court. It is the duty of this court to retry the issues of fact involved in the findings complained of and to reach an independent conclusion. *Smith v. Sorensen*, 222 Neb. 599, 386 N.W.2d 5 (1986); *School Dist. No. 21 v. Ochoa*, 216 Neb. 191, 342 N.W.2d 665 (1984). Bearing this in mind, we must decide whether claimant's conduct constituted misconduct within the meaning of the Nebraska Employment Security Law. Pursuant to § 48-628(b) a claimant may be disqualified for benefits if he has been discharged for misconduct connected with his work. The term "misconduct" itself is not defined in the statute. This court has defined the term to include

" 'behavior which evidences (1) wanton and willful disregard of the employer's interests, (2) deliberate violation of rules, (3) disregard of standards of behavior which the employer can rightfully expect from the employee, or (4) negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard of the employer's interests or of the employee's duties and obligations.' . . ."

*Smith v. Sorensen, supra* at 603, 386 N.W.2d at 8; *McCorison v. City of Lincoln*, 215 Neb. 474, 339 N.W.2d 294 (1983); *Stuart v. Omaha Porkers*, 213 Neb. 838, 331 N.W.2d 544 (1983).

Great Plains argues that the misconduct that resulted in claimant's disqualification was not the repeated garnishments themselves but the deliberate violation of the work rule prohibiting excessive garnishments unless the employee can demonstrate mitigating factors. If it is established that claimant has violated the company's work rules, such a violation of the rules, pursuant to the definition of misconduct in *Smith v. Sorensen, supra*, may constitute misconduct sufficient to disqualify the claimant for unemployment benefits. In determining if a violation of a company rule constitutes misconduct, we must first determine if the rule is reasonable. *Smith v. Sorensen, supra; Snyder Industries, Inc. v. Otto*, 212

Neb. 40, 321 N.W.2d 77 (1982). The determination as to reasonableness must be made in light of § 48-628(b), which requires that misconduct for which a disqualification from receiving unemployment benefits may result must be committed in connection with the employee's work.

In the case before us, the record shows that claimant's actions, in so conducting his private life in its financial aspects that multiple garnishment resulted, were not done in connection with his employment with Great Plains. Insofar as his employment, Great Plains characterized him as a "[w]ell skilled employee." In his 20 months' employment with Great Plains, claimant's wage rate increased from $3.75 per hour to $5.25 per hour. Aside from the effects of the garnishments against his wages, the record does not show any company dissatisfaction with claimant's work performance. We hold that the conduct of an employee in so acting as to create a situation where garnishments are filed with his or her employer is not "misconduct connected with his or her work." Suffering repeated garnishments is not generally such misconduct as to disqualify a discharged employee from receiving unemployment compensation benefits. Individual financial reverses may well be the result of a person's inability to cope with the system in which that person is trying to make a living. Bankruptcies, both personal and corporate, are almost a way of life in our society. To deprive a debtor of the right to unemployment benefits for a limited time, where the unemployment results from his position as a debtor unable to pay his bills, would be to defeat the purpose of the Nebraska Employment Security Law. The "Employment Security Law is to be liberally construed in order that its beneficent purpose of paying benefits to involuntarily unemployed workers may be accomplished." *Sorensen v. Meyer*, 220 Neb. 457, 462, 370 N.W.2d 173, 177 (1985).

In so holding, the court does not say a company rule against garnishments is unreasonable for all purposes. Such a rule may govern whether or not an employee is retained in employment. A violation of the rule may warrant termination of employment, but the resulting discharge cannot be considered to be for misconduct connected with one's work in determining

the right to receive unemployment compensation benefits. Unemployment benefits to aid individuals in financial difficulties should not punish them for being in that condition. A violation of a garnishment policy may warrant termination but cannot operate so as to result in disqualification from receiving unemployment benefits.

In so holding, we agree with the holding of the Supreme Court of Michigan in *Reed v. Employ. Security Comm.*, 364 Mich. 395, 397, 110 N.W.2d 907, 908 (1961), where that court stated:

> Garnishment of plaintiff's wages may well have been a nuisance to defendant company. Many acts of an employee might meet with the displeasure or disapproval of an employer and be prohibited by rule by him. Breach of such rule might, in a sense, be considered misconduct warranting discharge from employment. Unless the rule and its violation bear some reasonable application and relation to the employee's task, can the breach be said to be misconduct within the disqualifying language of section 29(1)(a)(2) of the statute? The purpose of the act is to benefit unemployed in financial straits, not to penalize them for being in that condition. We do not believe that the language of the statute discloses or its purpose permits reading into it a legislative intent to stamp the conduct here involved as misconduct within the meaning of the cited section.

See, also, *Chalker v. First Federal Savings and Loan Ass'n*, 126 N.E.2d 475 (Ohio Ct. of Common Pleas 1955); *Horns v. Brown*, 243 La. 936, 148 So. 2d 607 (1963).

Great Plains further argues the district court erred in requiring a showing of intentional misconduct, when only ordinary misconduct is pled. This assignment of error is without merit. A reading of the statutes indicates two standards of error, i.e., ordinary misconduct resulting in partial disqualification or a gross, flagrant, and willful misconduct resulting in total disqualification from recovering unemployment benefits. This case involved a partial disqualification of 9 weeks. Therefore, only a showing of ordinary misconduct was necessary. Great Plains seems to

derive its argument from the language of the tribunal's opinion stating it "can find no *intentional* misconduct . . . ." (Emphasis supplied.) Great Plains contends that this language indicates a requirement of showing something other than ordinary misconduct. Our review is de novo, and we have held that claimant's conduct did not constitute misconduct so as to disqualify him for unemployment benefits for the 9 weeks. Since claimant's violation of the company rule did not constitute ordinary misconduct, we do not reach the issue of gross misconduct. The judgment of the district court is affirmed.

AFFIRMED.