GORDON R. POORE, APPELLANT, V. CITY OF MINDEN, NEBRASKA, A
MUNICIPAL CORPORATION, AND COMMISSIONER OF LABOR, STATE
OF NEBRASKA, APPELLEES.

464 N.W.2d 791

Filed January 18, 1991.   No. 90-279.

Michael E. Sullivan, of Helmann & Sullivan, P.C., for appellant.

Thomas G. Lieske, of Lieske and Kristensen, for appellee City of Minden.

Laureen Van Norman and John F. Sheaff for appellee Commissioner of Labor.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

Gordon R. Poore, a former employee of defendant City of Minden, has appealed from an order of the district court which affirmed an order of the Nebraska Appeal Tribunal. The Nebraska Appeal Tribunal had affirmed the determination of a claims deputy denying Poore unemployment compensation benefits and canceling all wage credits earned prior to the discharge of Poore by the City of Minden.

Poore was an employee for the City of Minden from 1976 to May 19, 1989. He was a sanitation worker managing a sanitation truck and route for the City of Minden. He never collected the garbage fees, billed the garbage fees, read the electrical or water meters, billed the electrical or water

customers, or inspected the service lines.

In April 1989, Rick Bienhoff, the city water superintendent, discovered that unmetered water service was being provided to a building owned by Poore. Poore had not paid for water service to that building. It was also discovered that unmetered electrical service was being provided to the building. Poore acknowledged that he had been receiving both water and electrical services without paying for them despite the fact that he knew the procedure needed to initiate and terminate service to the property.

The previous owner of the building had paid minimum charges for water service because the water was not metered. The bills were not sent to Poore after he purchased the property. There was testimony that purchasers of property have to notify the city of the purchase so that the bills will be sent to the new owners.

There was also some testimony that Poore was involved in a lawsuit with the City of Minden concerning a drainage problem. There was another confrontation with the City of Minden concerning a storm sewer. This testimony was offered on a limited basis to show that there may possibly have been other reasons for the termination rather than the use of services without paying for the services.

On April 19, 1989, Austin Dodge, the mayor; Thomas Kenney, the city administrator; and Poore met to discuss the unmetered services. The city submitted a bill for $1,196 to Poore based on a minimum charge for both water and electrical services to the building for more than the preceding 10 years. Poore immediately wrote a check for the amount and gave it to the two city officials. Mayor Dodge then terminated Poore's employment with the City of Minden, giving Poore 30 days' notice.

Poore applied for unemployment benefits on May 24, 1989. The Nebraska Department of Labor claims deputy determined that Poore's conduct, using the water and electrical services without paying for the services, constituted gross misconduct, and canceled all wage credits earned prior to the date of termination. Poore appealed the decision to the Nebraska Appeal Tribunal and the district court for Kearney County. The

appeal tribunal affirmed the decision of the claims deputy, and the district court affirmed the appeal tribunal's decision.

The sole error assigned by Poore on appeal to this court is that the district court erred in determining that Poore's use of utility services without payment therefor constituted gross misconduct connected with his work.

Because the petition on review was filed in the district court after July 1, 1989, we review the case for errors appearing in the record. See Neb. Rev. Stat. § 84-918 (Cum. Supp. 1990). However, the facts are not in dispute; therefore, only questions of law are presented. In reviewing the law, this court has an obligation to reach a decision independent of the district court's.

The basis for the determination by the Department of Labor that Poore was not entitled to benefits was that his conduct constituted gross misconduct pursuant to Neb. Rev. Stat. § 48-628 (Reissue 1988). That section provides in part as follows:

> An individual shall be disqualified for benefits:
>
> . . . .
>
> (b) For the week in which he or she has been discharged for misconduct connected with his or her work . . . except that if the commissioner finds that such individual's misconduct was gross, flagrant, and willful, or was unlawful, the commissioner shall totally disqualify such individual from receiving benefits with respect to wage credits earned prior to such misconduct.

"Misconduct," as referred to in § 48-628(b), has been defined by this court in the following manner:

> While the term "misconduct" is not specifically defined in the statute, it has generally been defined to include behavior which evidences (1) wanton and willful disregard of the employer's interests, (2) deliberate violation of rules, (3) disregard of standards of behavior which the employer can rightfully expect from the employee, or (4) negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard of the employer's interests or of the employee's duties and obligations.

*Stuart v. Omaha Porkers*, 213 Neb. 838, 840, 331 N.W.2d 544, 546 (1983).

The term "gross" is defined by Webster's Third New International Dictionary, Unabridged 1002 (1981) as "b(1) glaringly noticeable: FLAGRANT . . . (2): OUT-AND-OUT, COMPLETE, UTTER, UNMITIGATED, RANK."

It seems quite apparent that one's obtaining electrical and water services from his or her employer for a period of 10 years without paying for them constitutes gross misconduct. Poore concedes as much in his brief when he states that he "engaged in an unacceptable course of conduct over a period of time that ran parallel with his employment with the City of Minden." Brief for appellant at 9. The real question is whether this is conduct "connected with his . . . work."

Apparently, there are no Nebraska cases directly on point on this issue. There are many cases which have dealt with the matter of misconduct which was more directly connected with the employee's job.

In *Caudill v. Surgical Concepts, Inc.*, 236 Neb. 266, 460 N.W.2d 662 (1990), this court held that falsifying receipts constitutes misconduct. The employee had submitted a receipt for a business lunch that she did not have. Further, the employee had failed to make calls upon certain areas within her sales territory.

*Tuma v. Omaha Public Power Dist.*, 226 Neb. 19, 409 N.W.2d 306 (1987), is a case in which the employee was terminated after she did not show up for work. The employee knew that a doctor's letter was required in situations such as hers, but did not get the letter. This court held that the actions of the claimant were misconduct. An employer expects its employees to show up for work. Failure to show up for work creates a problem for the employer in running the employer's business.

In *O'Keefe v. Tabitha, Inc.*, 224 Neb. 574, 399 N.W.2d 798 (1987), this court once again dealt with absence from work. In that case, the employer set forth an absentee plan. Employees missing too many days were terminated. Claimant missed too many days and was terminated pursuant to the plan. This court concluded that excessive absence from work was harmful to the

employer, the actions of the employee were misconduct, and the benefits were properly denied.

In the case of *Smith v. Sorensen*, 222 Neb. 599, 386 N.W.2d 5 (1986), this court found that the claimant's actions were misconduct. In that case, the claimant logged in fraudulent addresses of places to which he claimed to have made repairs or calls. The employer warned claimant to refrain from logging in fraudulent addresses. The claimant again logged in fraudulent addresses. The employer dismissed the claimant. This court concluded that the claimant's actions were misconduct and that the benefits were properly denied.

In *Barada v. Sorensen*, 222 Neb. 391, 383 N.W.2d 799 (1986), this court held that the failure to elect an option for a retirement plan was misconduct. The employee retirement plan was switched over to a new plan. There were several options available to the employees, but the choice of retaining the same plan was not one of the options. The employees had a time limit to elect an option for a retirement plan. Claimant refused to elect an option for a retirement plan. This court held that her actions in refusing to select an option were misconduct. Unemployment benefits were denied because of her misconduct.

The case of *McCorison v. City of Lincoln*, 215 Neb. 474, 339 N.W.2d 294 (1983), deals with absence from work. This court concluded that the employee's having too many unexcused absences constituted misconduct.

In *Bristol v. Hanlon*, 210 Neb. 37, 312 N.W.2d 694 (1981), the claimant cut the hides of cattle in the process of removing the hides. The claimant was continually told to refrain from cutting the hides. Further, the claimant knew that the hides were used for clothing and thus by cutting the hides he was reducing the possible use of the hides. This court held that his conduct was willful and intentional misconduct and denied the claimant's unemployment benefits.

There are at least two rather recent cases which have held that the employee's actions did not constitute misconduct. In *Great Plains Container Co. v. Hiatt*, 225 Neb. 558, 407 N.W.2d 166 (1987), this court held that an employee's wages being excessively garnished was not misconduct connected with the

employee's work which would result in the denial of unemployment benefits. This court noted that the actions could be misconduct so as to result in termination, but not misconduct which would preclude the claimant from receiving unemployment benefits.

In an earlier case, *Snyder Industries, Inc. v. Otto*, 212 Neb. 40, 321 N.W.2d 77 (1982), Otto violated a company policy by associating with a former employee. This court held that there was no misconduct by Otto which would result in the denial of unemployment compensation benefits.

There are several cases from other jurisdictions which bear on this problem. The New York Supreme Court Appellate Division has consistently held that conduct similar to Poore's conduct is misconduct connected with work. In the case of *Matter of Markowitz*, 94 A.D.2d 155, 464 N.Y.S.2d 262 (1983), the claimant was convicted of giving gratuities to a public official, a felony not directly related to his employment. Claimant's duties included reviewing and developing budget proposals, formulating policies and procedures for funding of community programs, and monitoring grants and expenditures by his agency. The felony was bribing a public official on immigration matters. The court found that he was a civil servant with a public trust. The court stated that employees of the taxpayers must maintain the highest standard of integrity and incorruptibility. Thus, the court found that the claimant's conduct evinced an intentional and conscious disregard of the standard of behavior which an employer expects of an employee.

A second case out of the New York Supreme Court Appellate Division is *Matter of McCallum*, 126 A.D.2d 833, 510 N.Y.S.2d 322 (1987). In that case, claimant, a former highway repairman, was discharged for conduct "reasonably related" to his employment. The claimant owed $1,495 in outstanding New York City parking tickets. When the claimant failed to make the required good faith effort to pay off the tickets, he was fired. His application for unemployment benefits was denied. The claimant argued that his failure to pay overdue parking tickets was not reasonably related to his employment and thus was not misconduct under the labor law. The court stated that it has

held as a matter of law that an employee's conduct evincing a conscious and intentional disregard of the standard of behavior expected of a governmental employee constitutes misconduct in connection with his employment, where the employee's continued employment would threaten the integrity of the government and reflect unfavorably on the government in the eyes of the public. Thus, the employee was denied unemployment benefits because of misconduct.

In the case of *Kobusky v. Com., Unemployment Compensation Bd. of Review*, 46 Pa. Commw. 613, 406 A.2d 1226 (1979), the court found that claimant's benefits were properly denied on the grounds of willful misconduct. Claimant was an employee in the hosiery department of K Mart. She removed a new pair of shoes from a display in the shoe department, cut off the sales ticket, and wore the shoes for about a half hour. She then took them off and placed them under her counter, which was in violation of a rule that prohibits employees from keeping shoes under their counters. Claimant testified that she had bought the shoes several days earlier, but there was no record of such a transaction.

The court affirmed the denial of benefits, concluding that removing the shoes from the display and placing them underneath her counter was in direct violation of company policy. This exhibited a deliberate disregard of the standard of behavior expected by her employer. See, also, *Osborn v. Rev. Bd.*, 178 Ind. App. 22, 381 N.E.2d 495 (1978) (denying unemployment benefits to an employee dismissed for "just cause," pursuant to a statute. The employee, a cocktail waitress, while off duty, tinkered with a fire extinguisher at a bar where she worked); *Danko v. Com., Unemployment Comp. Bd. of Rev.*, 40 Pa. Commw. 387, 397 A.2d 489 (1979) (finding that employee was guilty of willful misconduct when he removed tires from his employer's warehouse, despite the fact that criminal charges were not prosecuted); *Green v. Com., Unemployment Compensation Bd.*, 87 Pa. Commw. 176, 486 A.2d 1052 (1985) (concluding that the denial of unemployment compensation was proper when the claimant, a nurse at an institute for the mentally retarded, made false statements to obtain public assistance and defrauded her employer by

accepting welfare payments after she began working. The court found that the claimant's conduct demonstrated an unacceptable standard of behavior and directly related to the claimant's ability to handle her duties because an employee owes an employer both loyalty and honesty); *Texas Employment Commission v. Ryan*, 481 S.W.2d 172 (Tex. Civ. App. 1972) (holding that a forklift operator discharged for taking an oxygen bottle from his employer during off-duty hours was in violation of company policy and was disqualified from unemployment compensation benefits).

In the following cases the courts held that the actions were performed outside of work and thus did not constitute misconduct in connection with work. In *London v. Unemp. Comp. Bd. of Review*, 111 Pa. Commw. 132, 533 A.2d 792 (1987), an employee of G.T.E. of Pennsylvania was denied unemployment compensation benefits by the Office of Employment Security and the referee. That decision was affirmed by the Unemployment Compensation Board of Review. The Commonwealth Court of Pennsylvania reversed.

The claimant prepared the employer's telephone directories. She obtained telephone service by using the middle and last names of her son and husband and by using her son's Social Security number. At the time, claimant had five outstanding accounts, with a total past due amount of $867.47. The court concluded that claimant's misconduct was not in connection with her work. Claimant's misconduct was connected with the employer only as a consumer. The court noted that while the misconduct might have been grounds for termination, it was not grounds for denial of unemployment compensation.

In *Jones v. Emp. Sec. Comm.*, 4 Mich. App. 300, 144 N.W.2d 795 (1966), an employee that kept excess change obtained from a vending machine located at his workplace was not guilty of misconduct connected with his employment. The court stated that while the employee's conduct in not returning the excess change may not have met the employer's standards and thus such breach may have entitled an employer to discharge the employee, such behavior was not misconduct connected with the employee's work disqualifying him from receiving unemployment compensation. See, also, *Beaty v.*

*City of Idaho Falls,* 110 Idaho 891, 719 P.2d 1151 (1986) (holding that a garbage collector who was convicted of possession of marijuana and stolen property and discharged 3 days later for violation of the city employment code of conduct because of the felony convictions should not be denied unemployment benefits, because the misconduct was not in connection with his employment). *Giese v. Employment Division,* 27 Or. App. 929, 557 P.2d 1354 (1976) (concluding that the actions of a state-employed university professor discharged for conspiring to explode devices in federal buildings to damage or destroy the buildings did not constitute misconduct connected with his work and thus unemployment benefits were properly allowed. We note that the buildings the claimant attempted to damage or destroy were not the buildings of his employer, the state; the buildings were federal government buildings); *Nelson v. Employment Security,* 98 Wash. 2d 370, 655 P.2d 242 (1982) (finding that the claimant, a cashier, should not be denied unemployment benefits after she was discharged from her employment for shoplifting at another store. The court concluded that the misconduct was not in connection with her employment).

The case law in other jurisdictions appears to lean toward finding misconduct in cases where the employees obtained goods or services from their employers. The courts are even more inclined to find misconduct in cases where the employee is a government employee.

We believe that general misconduct totally divorced from an employee's job or not in any way related to his or her employer is not misconduct justifying denial of all benefits.

However, the misconduct in this case was not like that found in *Beaty, supra,* where the employee was discharged for convictions of possession of marijuana and stolen property not connected with his employment; in *Giese, supra,* where a university professor was discharged for conspiring to explode devices in federal buildings not connected with his employment; or in *Nelson, supra,* where the employee was discharged for shoplifting from a store other than the one where she was employed. Rather, the actions in this case were more in line with those in *Kobusky v. Com., Unemployment Compensation Bd.*

*of Review*, 46 Pa. Commw. 613, 406 A.2d 1226 (1979), where an employee of the hosiery department in K Mart stole merchandise from another department, or in *Ryan, supra*, where a forklift operator was discharged for taking an employer's oxygen bottle during off-duty hours.

It goes without saying that Poore's employment had nothing to do with his taking electrical and water services from the employer over a period of 10 years without paying for them; i.e., the same improper and unlawful acts could have been accomplished no matter for whom he worked. However, to say that one who does take things unlawfully from a governmental employer over this extended period of time has not done something connected with his employment overlooks the relationship existing between a governmental unit and its citizens. Toleration of such conduct by a governmental employer would reflect unfavorably upon the employer in the eyes of the public. Such an unacceptable standard of behavior by the employee in this instance was directly related to the employee's ability to handle his duties because he owed his employer both loyalty and honesty. See *Green v. Com., Unemployment Compensation Bd.*, 87 Pa. Commw. 176, 486 A.2d 1052 (1985).

We hold as a matter of law that a governmental employee's conduct that evinces a conscious and intentional disregard of standards of behavior which one's governmental employer would have a right to expect from such employee constitutes misconduct in connection with the employee's employment, where continued employment would create a genuine threat to the integrity of the governmental employer and reflect unfavorably upon the governmental employer in the eyes of the general public. See *Matter of McCallum*, 126 A.D.2d 833, 510 N.Y.S.2d 322 (1987).

The judgment of the district court is affirmed.

AFFIRMED.

CAPORALE, J., dissenting.

There is absolutely no question that applicant, Gordon R. Poore, was guilty of unlawful, gross, flagrant, and willful misconduct such as to warrant the termination of his employment with the City of Minden; this notwithstanding that

it seems impossible his thefts could have continued without discovery for a whole decade without at least one other agent of the good citizens of Minden being less than diligent.

Nonetheless, I must dissent because the question is not whether Poore should have been fired, but whether the law disqualifies him from receiving unemployment benefits. The majority concedes that in order for him to be so disqualified, the misconduct must have been connected with applicant's work. See *Great Plains Container Co. v. Hiatt*, 225 Neb. 558, 407 N.W.2d 166 (1987). Indeed, Neb. Rev. Stat. § 48-628(b) (Reissue 1988) provides that an applicant is disqualified for benefits

> [f]or the week in which he or she has been discharged *for misconduct connected with his or her work* . . . and for not less than seven weeks nor more than ten weeks which immediately follow such week . . . except that if . . . such individual's misconduct was gross, flagrant, and willful, or was unlawful, the commissioner shall totally disqualify such individual from receiving benefits . . . .

(Emphasis supplied.) Thus, all misconduct disqualifications are dependent upon a work connection; the nature of the misconduct affects only the period of disqualification.

The majority acknowledges that Poore's "employment had nothing to do with his taking electrical and water services," as he could have done the same thing "no matter for whom he worked." It then declares a rule which requires public employees to be worthier of esteem than the citizens he or she serves and makes all public employee behavior which "evinces a conscious and intentional disregard of standards of behavior which [the] governmental employer would have a right to expect" work-connected misconduct. Although such a rule may well be appropriate when considering the behavior of a judge, mayor, or other public servant in whom citizens justifiably repose special trust and confidence, there is nothing in § 48-628 which makes such a rule applicable to a garbage collector who seeks unemployment benefits while he adjusts to his newfound status in life.

While the majority opinion may be emotionally satisfying, it is not legally defensible. Accordingly, I would reverse the

judgment of the district court and direct the award of appropriate benefits.

GRANT, J., dissenting.

I respectfully dissent. Neb. Rev. Stat. § 48-628 (Reissue 1988) provides, in pertinent part, "An individual shall be disqualified for benefits: . . . (b) For the week in which he or she has been discharged for misconduct connected with his or her work . . . ." The later reference to "gross" misconduct in that statute has only to do with the fact that the commissioner may *totally* disqualify an employee for gross misconduct, rather than disqualify the employee "for not less than seven weeks nor more than ten weeks" for lesser misconduct. Any misconduct, gross or other, must be, under the plain words of the statute, "connected with [the employee's] work."

Appellant's misconduct was not connected with his work. As far as the record shows, he was an exemplary, laboring garbageman. His conduct was wrongful in his actions as a landowner. It is not determinative, of course, but it is hard for me to think appellant's actions were more wrongful than the actions of the City of Minden were negligent—if one can compare apples and oranges.

The City of Minden had every right to fire appellant, but no one should be able to deprive him of unemployment benefits, unless such deprivation is authorized by statute.

I would reverse.