LORETTA F. BALLARD, APPELLEE, V. GILTNER PUBLIC SCHOOLS, SCHOOL DISTRICT NO. 2, HAMILTON COUNTY, NEBRASKA, APPELLANT.

492 N.W.2d 855

Filed December 4, 1992.   No. S-90-036.

John F. Recknor, of Barlow, Johnson, DeMars & Flodman, for appellant.

L. William Kelly III, of Kelly & Schroeder, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

## PROCEDURAL BACKGROUND

In the county court for Hamilton County, Loretta F. Ballard sued Giltner Public Schools, School District No. 2 of Hamilton County, Nebraska (School District), for breach of their written employment contract. In its answer, the School District pled res judicata, based on a decision by the Nebraska Appeal Tribunal which determined that Ballard was disqualified from receiving unemployment compensation benefits, and alleged that Ballard had breached her employment contract as the result of employee misconduct.

The trial court concluded that the School District had breached the employment contract because Ballard's dismissal from employment was unjustified, and awarded Ballard a judgment of $4,558 against the School District, after credit for Ballard's receipt of 1 month's salary ($522) and $1,184 in unemployment compensation benefits to which Ballard was unentitled. Ballard does not contest use of unemployment compensation benefits as a credit in determining the amount of the damages judgment awarded to Ballard. Cf. *Bang v.*

*International Sisal Co.*, 212 Minn. 135, 4 N.W.2d 113 (1942) (receipt of unemployment compensation benefits is not allowable as a credit against damages recovered in an employee's action for breach of employment contract). Cf., also, *Dehnart v. Waukesha Brewing Co.*, 21 Wis. 2d 583, 124 N.W.2d 664 (1963) (receipt of unemployment compensation benefits is allowable as a credit against damages recovered in an employee's action for breach of employment contract). The School District appealed to the district court, which affirmed the county court judgment.

## BALLARD'S DISMISSAL FROM EMPLOYMENT

Ballard had been employed by the School District as an assistant cook for 8 years pursuant to annual written agreements. Ballard's most recent agreement, which was denominated "School Employee Contract," stated that the period of her employment was August 29, 1983, to May 24, 1984, at an annual salary of $6,264 paid in monthly installments. The contract also stated that Ballard's employment could exist during the contract period "as long as [she] render[ed] satisfactory service."

On the morning of September 29, 1983, just 1 month after commencement of her work as a cook for the School District under the contract in issue, Ballard was called into the office of Douglas Bandemer, school principal, to discuss the misconduct of her son, an eighth grade student at the same school where Ballard worked. At the conclusion of the conference, and as Ballard was leaving the principal's office, the principal's secretary heard Ballard, in a Shakespearean aside, say that the principal was a "dumb bastard." After the secretary told the principal what Ballard had said, the principal fired Ballard that same afternoon.

Ballard applied for unemployment compensation benefits pursuant to the Employment Security Law, Neb. Rev. Stat. § 48-601 et seq. (Reissue 1988), but was later disqualified from benefits when the Department of Labor determined that Ballard's employment was terminated as a result of work-related misconduct. In Ballard's appeal to the Nebraska Appeal Tribunal, the tribunal determined that Ballard's remark

"was such as to disregard the standards of behavior which an employer has a right to expect of its employees on the business premises and thereby jeopardized the employer/employee relationship." Ballard did not appeal the tribunal's decision.

## STANDARD OF REVIEW

An action for damages resulting from a breach of contract is a law action.

In a bench trial of a law action, a trial court's factual findings have the effect of a verdict and will not be set aside unless clearly erroneous. In reviewing a judgment awarded in a bench trial of a law action, an appellate court does not reweigh evidence, but considers the evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence.

*Broekemeier Ford v. Clatanoff*, 240 Neb. 265, 267, 481 N.W.2d 416, 418 (1992). Accord, *Albee v. Maverick Media, Inc.*, 239 Neb. 60, 474 N.W.2d 238 (1991); *Justice v. Hand*, 227 Neb. 856, 420 N.W.2d 704 (1988); *Alliance Nat. Bank v. State Surety Co.*, 223 Neb. 403, 390 N.W.2d 487 (1986).

## RES JUDICATA

The School District contends that as the result of Ballard's proceeding under the Employment Security Law, the doctrine of res judicata precludes relitigation of the employee misconduct issue decided by the Nebraska Appeal Tribunal. According to the School District, because the Nebraska Appeal Tribunal determined that termination of Ballard's employment resulted from work-related misconduct, the trial court in Ballard's contract action was bound by the Nebraska Appeal Tribunal's determination under the Employment Security Law.

In *NC+ Hybrids v. Growers Seed Assn.*, 228 Neb. 306, 310-11, 422 N.W.2d 542, 545 (1988), we stated:

The doctrine of res judicata is based on the principle that a final judgment on the merits by a court of competent jurisdiction is conclusive upon the parties in any later litigation involving the same cause of action. . . .

Res judicata is founded on a policy favoring

termination of an action by preclusion or prevention of subsequent litigation on the same cause.

For use of res judicata, a litigant must affirmatively raise the issue and prove the factual basis for application of res judicata. See, *DeCosta Sporting Goods, Inc. v. Kirkland*, 210 Neb. 815, 316 N.W.2d 772 (1982); *Tedco Development Corp. v. Overland Hills, Inc.*, 205 Neb. 194, 287 N.W.2d 49 (1980); *State ex rel. Weasmer v. Manpower of Omaha, Inc.*, 163 Neb. 529, 80 N.W.2d 580 (1957). See, also, *Grand Lodge I.O.O.F. v. Marvin*, 220 Neb. 197, 369 N.W.2d 54 (1985) (use of the specific phrase "res judicata" is unnecessary when the facts alleged supply a basis for assertion of res judicata).

The School District did plead and offered to factually establish the decision of the Nebraska Appeal Tribunal in which the tribunal concluded that Ballard's remark about the principal was employee misconduct which disqualified Ballard from receiving unemployment compensation benefits. However, § 48-636 of the Employment Security Law specifically provides:

Except insofar as reconsideration of any determination is had under sections 48-630 to 48-632, any right, fact, or matter in issue, directly passed upon or necessarily involved in a determination or redetermination which has become final, or in a decision on appeal which has become final, *shall be conclusive for all the purposes of the Employment Security Law* as between the Commissioner of Labor, the claimant, and all employers who had notice of such determination, redetermination, or decision. Subject to appeal proceedings and judicial review as provided in sections 48-633 to 48-644, *any determination, redetermination, or decision as to rights to benefits shall be conclusive for all the purposes of such law and shall not be subject to collateral attack by any employer.*

(Emphasis supplied.)

In *White v. Ardan, Inc.*, 230 Neb. 11, 430 N.W.2d 27 (1988), we determined that conclusiveness of findings pursuant to the Employment Security Law is limited by § 48-636. In *White*, the plaintiffs sued their former employer for breach of their employment contracts. When Ardan asserted that termination

of the plaintiffs' employment was based on employee misconduct, the plaintiffs responded by showing that prior proceedings under the Employment Security Law had concluded with a finding that the plaintiffs were not guilty of misconduct in their employment with Ardan; hence, according to the plaintiffs in *White*, the doctrine of res judicata legally prevented Ardan's showing any employee misconduct to preclude the plaintiffs' subsequent contract action. This court disagreed by noting that § 48-636 (Cum. Supp. 1986) specifically provides that "any determination made under the Nebraska Employment Security Law is *conclusive for the purpose of that law*." (Emphasis in original.) 230 Neb. at 22, 430 N.W.2d at 34. Because *White* did not involve a claim for unemployment benefits, but, rather, involved a claim based on breach of contract, the doctrine of res judicata was unavailable in the employees' subsequent contract action for damages.

The School District argues that pursuant to our later holding in *Scott v. Mattingly, ante* p. 276, 488 N.W.2d 349 (1992), we should limit *White*. In *Scott*, we stated, "An unreviewed administrative hearing can preclude later litigation of the same issues," *id*. at 281, 488 N.W.2d at 351-52, but also acknowledged that " '[c]ourts do not, of course, have free rein to impose rules of preclusion, as a matter of policy, when the interpretation of a statute is at hand. In this context, *the question is not whether administrative estoppel is wise but whether it is intended by the legislature,*' " *id*. at 282, 488 N.W.2d at 352 (emphasis supplied) (quoting *Astoria Federal Sav. and Loan Ass'n v. Solimino*, ____ U.S. ____, 111 S. Ct. 2166, 115 L. Ed. 2d 96 (1991)).

Section 48-636 is clear on its face; a determination made pursuant to the Employment Security Law is conclusive only for the purpose of proceedings governed by the Employment Security Law. Ballard's suit is a claim and action based on the common law of contracts, not the statutory provisions found in the Employment Security Law. Therefore, the doctrine of res judicata is unavailable to the School District in Ballard's contract action.

## BREACH OF CONTRACT

The School District also asserts that the county court erred in determining that the School District lacked justification for termination of Ballard's employment.

Breach of contract is a contractual party's failure, without legal excuse, to perform a promissory obligation which forms the whole or part of a contract. See, *Davenport Hosp. Assn. v. Hospital Service*, 261 Iowa 247, 154 N.W.2d 153 (1967); *National City Bank v. E. & Sons, Inc.*, 158 Ohio St. 450, 110 N.E.2d 598 (1953); *Friedman vs. Katzner*, 139 Md. 195, 114 A. 884 (1921). See, also, 11 Samuel Williston, A Treatise on the Law of Contracts § 1290 (3d ed. 1968). As an affirmative defense, breach of contract must be pleaded and proved by the party having the burden of proof for the defense. See *Peters v. Wilks*, 151 Neb. 861, 39 N.W.2d 793 (1949).

Ballard's case may appear to be somewhat similar to *Poore v. City of Minden*, 237 Neb. 78, 464 N.W.2d 791 (1991), which involved a sanitation worker's suit under the Employment Security Law when Poore was disqualified from unemployment compensation benefits because he had, by unauthorized appropriation, obtained water and electricity from his city-employer. However, Ballard's action is based on an employer's breach of a contract for employment. "Work-related misconduct" that may justify denial of unemployment compensation benefits under the Employment Security Law is not synonymous with "just cause" for termination of an employment contract. See *Great Plains Container Co. v. Hiatt*, 225 Neb. 558, 407 N.W.2d 166 (1987). Therefore, the issue is whether the School District's discharge of Ballard from her employment was a repudiation of their employment contract.

The School District claims that Ballard breached her employment contract by violating school board policy. However, the trial court found that Ballard was never informed of school board policy asserted as a basis to justify Ballard's employment. We must accept that factual determination by the trial court and decide whether Ballard's conduct constituted just cause for termination of employment under the provisions of the written contract between the parties. The agreement

specifically provides that Ballard would be employed "as long as the employee render[ed] satisfactory service" as a school cook. Thus, under the employment contract, Ballard's employment could be validly terminated if she failed to render "satisfactory service" as a cook for the School District.

Although Ballard was never informed of school board policy, the School District contends that her "insubordinate" behavior justified termination of Ballard's employment. For the purpose of an employer-employee relationship, we have defined insubordination as "an employee's willful or intentional disregard of, or refusal to obey, an employer's reasonable order, rule, or regulation, which is expressed or implied and is given or promulgated under lawful authority related to the employment." *Wadman v. City of Omaha*, 231 Neb. 819, 828, 438 N.W.2d 749, 755 (1989).

Ballard was called to the principal's office as a parent, not as an employee, and was fired as the result of her remark after meeting with the principal regarding her son's behavior. Her comment was heard by the principal's secretary and, ostensibly, was related to the conference just concluded concerning the behavior of Ballard's son. The meeting between Ballard and the principal was completely unrelated to her job in the school cafeteria. As the secretary testified, "[T]he whole thing had nothing to do with her [Ballard's] work at the school in the kitchen." Moreover, the School District has never asserted that Ballard's job performance was anything less than satisfactory.

Bandemer, the school's principal, testified concerning Ballard's work:

Q. Did you at anytime find her work to be unsatisfactory?

A. No.

Q. She had been a loyal employee for going on nine years. Did her immediate supervisor, Mrs. Miller ever communicate to you any — any problem with Mrs. Ballard and her work?

A. No.

Q. So, based upon what a secretary told you that someone else said, you terminated an employee that had a contract of employment and had nearly a full school year

for that contract to run, and had been a loyal employee for over eight years, is that correct?

A. That's correct.

Thus, in the present case, no evidence indicates that the principal issued a work-related order to Ballard and that Ballard willfully failed to carry out such order. Rather, the termination of Ballard's employment was based solely on a comment that she made as a parent after meeting with the principal about the behavior of Ballard's son; hence, the subject of the meeting between Ballard and the principal was unrelated to Ballard's conduct as a school cook. Because the evidence fails to establish that Ballard had breached her employment contract, that is, unsatisfactorily performed her contract duties as a school cook, the School District has failed to establish justification for its terminating Ballard's employment under the contract.

Consequently, we affirm the district court's judgment which affirmed the county court's judgment for Ballard.

AFFIRMED.