JAMES H. CATRON, PLAINTIFF IN ERROR, v. JOHN E. SHEPHERD, DEFENDANT IN ERROR.

1. **Partnership**: PURCHASE BY PARTNER OF CLAIM AGAINST ANOTHER. C. and S. were in partnership in the business of fattening cattle, C. conducting the sales and receiving the money. About the sixth of April, 1875, C. having a considerable amount of partnership funds in his hands, and being about to sell all the stock owned by the partnership, purchased a claim against S. for about twenty-five cents on the dollar, and in his settlement with S. sought to apply it against the amount of partnership funds in his hands due S., at its face value. In an action on the claim, *Held*, that C. could recover no more than he had paid for the claim.

2. ———: ———. When property is purchased with partnership funds it inures to the benefit of the partnership.

3. ———: ———. Each partner is a principal, and also is agent for every other member of the firm, and a purchase made by one partner with the funds of another inures to the benefit of such partner, and cannot be applied by the agent to his own personal profit.

4. **Practice**: INTRODUCING TESTIMONY WITHOUT OBJECTION. Where testimony is introduced without objection, error will not lie upon the ground that the testimony was improperly admitted.

5. ———: ———: AMENDMENT OF PLEADINGS. Where testimony is introduced without objection tending to prove a different issue from that made in the pleadings, the court, after the trial, may permit the pleadings to be amended to conform to the facts proved.

Catron v. Shepherd.

ERROR from the district court for Otoe county. The facts are fully set forth in the opinion.

*J. L. Mitchell*, for plaintiff in error.

The word "defense" as used in the code, secs. 99, 100, must include partial as well as complete defenses, and the defendant should be prohibited from giving in evidence any new matter, either as a complete or partial defense, unless such matter had been set up in the answer. The court can only adjudicate upon the case made by the pleadings. *School District v. Shoemaker*, 5 Neb., 36. *Clark v. O. & S. W. R. R.*, 5 Neb., 314. *A. & N. R. R. v. Washburn*, 5 Neb., 117. *Peet v. O'Brien*, 5 Neb., 360. *Danforth v. Smith*, 23 Vermont, 247. *English v. Foxall*, 2 Peters, 595. *Chalmers v. Chalmers*, 6 H. & J., 29.

The issue upon which this case was tried was plainly and clearly defined. The answer was by way of confession and avoidance. The execution and assignment of the contract sued on was admitted as well as the amount due thereon. The affirmative allegation set up for the purpose of avoiding the liability was that plaintiff acquired and paid for said contract with defendant's money. Under well-settled principles of law if the defendant failed to sustain this affirmative defense the plaintiff would be entitled to recover the amount claimed in his petition. No evidence offered by defendant could properly be admitted or heard by the court which did not tend to establish his said defense. No other defense could be tried or passed upon by the court. See authorities above cited. The finding of the court which is to be treated in every respect as a verdict and special finding of a jury, negatived the only defense pleaded.

Suppose this case having been tried by a jury, a gen-

eral verdict had been returned that plaintiff was entitled
to recover only $4,318, with a special finding that
plaintiff did not purchase said contract with the defend-
ant's but with his own money, and the motion for
judgment had been filed in this case, what would have
been the duty of the court, the general verdict and the
special finding being inconsistent? Sec. 294, chap. 57,
General Statutes of Nebraska. The matters set up in
avoidance had been negatived—removed the confession
and only that remained, and plaintiff was entitled to
judgment as if no new matter had been pleaded.

A party will not be permitted to amend by setting
up a new cause of action or a new and different de-
fense—especially after verdict or trial. *Thompson v.
Phelan,* 2 Foster (N. H.), 339. *French v. Gerrish,* 2 Fos-
ter (N. H.), 97. *Lawrence v. Langley,* 14 N. H., 70.
*Newell v. Hussey,* 18 Maine, 249. *Walter v. Bennett,* 16
N. Y., 250. *Belknap v. Sealey,* 14 N. Y., 147. *Wood-
ruff v. Dickie,* 31 How. Pr., 164. *Butler v. Livermore,*
52 Barb. 570. Apply the law of these causes to the
one at the bar. The claim of defense set up by way
of amendment after trial, by order of the court, was not
only a new and different one from the one upon which
the case was tried, but it was inconsistent with it and
contradictory of it. The one upon which the case was
tried sounded in tort the conversion of defendant's
money; the new one is based on a contract or agree-
ment set out in said amendment. Are these not differ-
ent defenses, such as our statute requires should be
separately stated and numbered? The one is not only
in tort the other on contract, but one is a complete, the
other only a partial defense. The new matter in the
original answer was stated in one count, which con-
tained only one defense. How was it possible for
plaintiff to expect from the reading of that answer that
he would be called upon to try any such defense as is

set up in the amendment? He had a right to presume—and the law will sustain and protect him in presuming—that he would be called upon to meet the defense upon which defendant had chosen to stand in his answer, and no other. He was not prepared—and was not required to be prepared—to try the defense set up in the amendment. And it is submitted to this court, whether he shall be concluded by the amendment so ordered and made, or the finding of the court upon it, without even the semblance of a trial thereon.

*S. H. Calhoun,* for defendant in error.

Catron, by purchasing this claim against Shepherd, after or about the time of closing up of the partnership affairs, and in view of a settlement thereof, and knowing that on such a settlement he would have to pay to Shepherd a large sum of money, and further knowing of the advantageous offer made by Pierce to Shepherd to compromise the claim on which this suit is based—through, and by means of the effort made by Shepherd to have him (Catron) furnish the money necessary to enable Shepherd to accept and act upon said offer—became thereby the trustee of a *constructive trust* in favor of Shepherd. Perry on Trusts, secs. 168, 169, 170, 209 and 210, and the authorities therein cited. Under all the circumstances, the purchase by Catron was a diversion of the partnership funds to the payment of Catron's own debt (to Shepherd) and was a fraud upon Shepherd, and Catron holds said purchase with all the advantages gained thereby in trust for Shepherd. *Viles v. Bangs,* 36 Wis., 131. *Rogers v. Batchelor,* 12 Peters, 221. *Dob v. Halsey,* 16 Johns., 34. *Gram v. Caldwell,* 5 Cow., 489. *Sauntry v. Dunlap,* 12 Wis., 364. *Homer v. Woods,* 11 Cush., 62. *Greeley v. Wyeth,* 10 N. H., 15. *Caldwell v. Scott,* 54 N. H., 414. Perry on Trusts,

sec. 127, and cases therein cited. Colyer on Partner-
ship, secs. 181, 182. 1 Story's Equity, secs. 468, 623,
321, 322, 323. *Stoughton v. Lynch,* 1 John's Ch., 470.
*Kelly v. Greenleaf,* 3 Story, C. C., 93–101. *Farnam v.
Brooks,* 9 Pick., 212. Parson on Partnership (2d
ed.), 242.

MAXWELL, CH. J.

On the tenth day of October, 1872, the defendant pur-
chased of A. N. Pierce, of Texas, eleven hundred and
six head of cattle for the sum of $20,362, the money
to be paid in installments as provided in a written con-
tract executed by the parties at that time. The plaintiff
was appointed agent by Pierce to collect and receipt
for the payments. Various payments were made by
the defendant upon the contract up to the twenty-sixth
day of June, 1874, when there remained due and unpaid
about the sum of $3,000.00 This sum the defendant
appears to have been unable to pay, and Pierce offered
to take one thousand dollars for the claim if Shepherd
could pay within a certain time.

O. P. Mason, with whom the claim was left, testifies
as follows: "It was not paid at the time, and Pierce
instructed me to sell for $500.00 and attorneys' fees,
and I notified Shepherd and Catron. I left the papers
in my office, and afterwards it was sold to Catron.
Catron appeared to be assisting Shepherd in getting as
favorable a compromise as possible out of Pierce, and
it was a long time afterwards that Catron bought the
claim." This testimony is not denied.

In August, 1874, the plaintiff and defendant entered
into the following contract: "This is to certify that I
the undersigned have agreed with James H. Catron to
furnish on my farm in Wayne county, Iowa, and Apin-
noose county, Iowa, feed lots, all my pastures, from

the first of September through the fall and winter for
$200.00, about ninety acres of corn at seven dollars per
acre. Also, some four hundred dollars in money, or
this amount in corn, making over twelve hundred dol-
lars. Also, what tame grass hay at $4.00 per ton, to
be fed into James H. Catron's cattle. Upon these con-
ditions, that this feed lot and money is to go in as so
much money, entitling the undersigned to half the
profit or loss in these cattle at a previous fixed valua-
tion, with interest at fixed rate as in Nebraska. The
said Catron to furnish money to feed and buy what
hogs he may deem expedient. The said Catron hold-
ing all right and title in all above mentioned property.
The undersigned is given authority to go and buy corn
to feed these cattle and hogs, taking a receipt for all
moneys paid out, and to return any balance in his
hands to the said Catron. Is to receive a fair compen-
sation for actual services in buying corn and attending
cattle, Catron's time per day to offset Shepherd's time
per day.

"(Signed),          JOHN E. SHEPHERD."

This contract appears to have been made to take the
place of another that had existed between the parties
for some time. In January, March, and April, 1875,
the plaintiff sold the stock and retained the entire pro-
ceeds, amounting to a very large sum; the profits due
the defendant exceeded the sum of $1,900. On or
about the sixth day of April, 1875, Catron, being about
to leave for Iowa to ship and sell the last lot of stock,
purchased of Mason and Lehman, the attorneys for
Pierce, the account due from Shepherd to Pierce for
the sum of $500, and he claims to have paid one Hick-
lin $500 in addition, though for what particular pur-
pose is not clear. This account Catron appears to have
sought to turn in at its face in his settlement with
Shepherd. The defendant offered to take the account

in settlement at the sum the plaintiff had paid for it. This the plaintiff refused and instituted this action on the account to recover the sum of $3,737.55 and interest and costs. The cause was submitted to the court without the intervention of a jury, and the court "doth find that the plaintiff and defendant were partners engaged in the business of feeding and selling cattle and hogs; that the plaintiff made all sales and received the proceeds thereof, and while he had a considerable amount of partnership funds in his hands, and while the partnership affairs were unsettled, he purchased with his own money the claim sued on in this action; that while they were such partners, plaintiff purchased said claim at defendant's request, under an agreement that the amount paid, together with interest thereon at the rate of twelve per cent per annum, should be charged and allowed by the defendant in the final settlement between them; and that plaintiff paid for said claim the sum of $1,000 on the sixth day of April, 1875; and there is now due plaintiff from defendant thereon the sum of $1,318."

The plaintiff filed a motion for a new trial, which was overruled by the court, and judgment rendered on the finding. The plaintiff brings the cause into this court by petition in error. A number of errors are assigned that, in the conclusion we have reached, it is unnecessary to notice in detail.

The rule is well settled that the authority of a partner to dispose of the partnership funds extends only to the business of the partnership itself; and any disposition of those funds by any partner beyond such purpose is in excess of his authority as a partner, and a misappropriation of the funds for which the partner is responsible to the partnership. *Rodgers v. Batchelor*, 12 Pet., 230. *Dob v. Halsey*, 16 Johns., 34. *Gram v. Cadwell*, 5 Cowin, 489. *Homer v. Wood*, 11 Cush., 62.

*Purdy v. Powers,* 6 Barr, 492. *Greeley v. Wyeth,* 10 N. H., 15. *Sauntry v. Dunlap,* 12 Wis., 3,64. *Viles v. Bangs,* 36 Ind., 136.

Let us apply this principle to the case at bar. Here, during the existence of the partnership, and while one of the partners was holding a large surplus of profits in his hands belonging to his copartner, he purchases a claim against his copartner for a little more than twenty-five cents on the dollar of its face value, and seeks to set it up against his copartner for the entire sum due on the face of the contract. We are told that the court has found that this claim was paid for with funds belonging to the plaintiff, and not with partnership funds. This finding must be considered with reference to the other finding that the purchase was made by the plaintiff "while he had a considerable amount of partnership funds in his hands, and while the partnership affairs were unsettled;" and also with reference to the testimony, which shows he sought to bring this debt due on the contract in to satisfy the amount due from him to his copartner. Can it make any difference whether he took the money to pay for this claim out of a different drawer from that in which the partnership funds were kept, so long as he was keeping the entire partnership funds as his own? In his view of the case this was his own money; and that is all he swears to. He nowhere testifies that the money to pay for this claim was not derived from the partnership. Where a transaction is carried on with partnership funds it inures to the benefit of the partnership. No partner has a right to use the partnership stock or funds for his own private benefit. The law of partnership is but a branch of the law of principal and agent. Each partner is a principal, and each is an agent for every other partner; and, within the scope of the partnership, all are bound by the con-

tract of one.   Partners owe to each other the most
perfect good faith, reasonable diligence, and the exer-
cise of their best judgment and discretion.   Profits
made by an agent inure to the benefit of his princi-
pal.   Story on Agency, s. 210, and cases cited.   And
why should not the same rule obtain in cases of part-
nership, particularly where the partner is holding back
the proportion of funds due his copartner?   In such a
case it is safe to assume that the purchase was made
with funds belonging to his copartner, it being sought
to apply the claim in satisfaction of the amount due.

Upon the termination of the partnership, the parties
are entitled to an accounting.   This has been had
between the parties in this case, and a large sum found
due the defendant.   This fund the plaintiff holds in
trust for the defendant's use; and, while holding such
fund, he cannot be permitted to profit at the expense
of the defendant by retaining it.   In the absence of a
contract therefor, the plaintiff could not recover the
face of the contract.   But the court finds that the
plaintiff agreed to purchase the claim for the defend-
ant; and all the testimony tends to support this find-
ing.   The defendant testifies that he entered into such
an agreement.   Mason testifies that the plaintiff " ap-
peared to be assisting the defendant in getting as
favorable a compromise as possible out of Pierce."
And the plaintiff does not deny this testimony.   He
states, " I was Mr. Shepherd's friend at that time, and
I told Mr. Pierce, and he said he would talk the mat-
ter over before another account came in from Texas."
On his re-direct examination, he testifies that he never
had any conversation with Shepherd after the time tes-
tified to by Judge Mason.   Can it be that these nego-
tiations of the plaintiff with Pierce, under the guise
of friendship for the defendant, were simply to reduce
the price of the claim to as low a sum as possible, to

enable him to profit by it? We must reject this con-clusion, and accept the testimony showing that the transaction was for the benefit of the defendant.

This being the case, the record fails to disclose any reason why he should not adhere to his contract. The pretext that the parties quarreled about the sum of $175.00 is too trivial to admit of consideration.

The court erred in adding the amount of $500.00 paid to Hicklin, who seems to have had no interest in the claim but a mere right to purchase it, which had not been perfected.

It is claimed by the plaintiff that the court erred in admitting the testimony of the defendant tending to prove the agreement mentioned in the finding of the court, and also in permitting the defendant to amend his answer to conform to the facts proved. In answer to the first objection it is sufficient to say that no ob-jection was made by the plaintiff to the testimony of the defendant upon that point. After the plaintiff had testified without objection, that the plaintiff was going to help him "get it (the claim) along in February," objection was made to his testimony as to the price; but that was not material, and could not have preju-diced the plaintiff. Besides, Mason and the plaintiff both testify without objection as to the price. The rule is well settled in this court that where testimony is admitted without objection, error cannot be pre-dicated thereon, and a party objecting to the admission of testimony must assign the reasons for the objections. *Morgan v. Larsh*, 1 Neb., 367. Tecumseh Town Site case, 3 Id., 279. *Pyle v. Warren*, 2 Id., 248. *Horbach v. Miller*, 4 Id., 48. *Michel v. Ware*, 3 Id., 235.

The objection to the amendment of the answer is not well taken. In *Curtis v. Cutler*, 7 Neb., 317, the petition did not state a cause of action, and the defend-ant objected to the introduction of any testimony on

that ground. During the progress of the trial the court permitted an amendment of the petition. The defendant objected to the introduction of testimony under the amended petition, upon the ground that it did not state a cause of action. The court overruled the objection and admitted the testimony, and on the conclusion of the trial permitted the plaintiff to file an amended petition, to conform to the facts proved. This the court held could not be done. But this rule has no application where testimony is admitted without objection. In such case, the court may order the pleadings amended to conform to the facts proved. In the case at bar, nearly all the objectionable testimony was admitted without objection on the part of the plaintiff, and much of it introduced by the plaintiff himself. Under these circumstances the court did not err in permitting an amended answer to be filed, and the amendment should have included affirmative relief to the defendant for the amount due him, the testimony being before the court.

The affidavits in support of the motion for a new trial are merely cumulative, and fail to show that the plaintiff was taken by surprise by the amendment of the answer, or that he has been injured in the least. It is clear that there is no error in the record of which the plaintiff can complain. The judgment of the district court is affirmed with costs, and as the bill of exceptions shows that the defendant soon after the settlement, offered to allow the plaintiff the amount he had paid for the claim, which he refused, he cannot now recover costs in the court below.

JUDGMENT ACCORDINGLY.