MERLE R. McCLEMENS II, APPELLEE, V. UNITED PARCEL SERVICE, INC., APPELLEE, RONALD E. SORENSEN, COMMISSIONER OF LABOR, STATE OF NEBRASKA, APPELLANT.

358 N.W.2d 748

Filed November 30, 1984.    No. 84-081.

Pamela A. Mattson, for appellant.

Carla J. Alexander of Downing & Alexander, for appellee McClemens.

BOSLAUGH, WHITE, and CAPORALE, JJ., and RIST, D.J., and COLWELL, D.J., Retired.

CAPORALE, J.

Merle R. McClemens II filed for unemployment compensation benefits under the Nebraska Employment Security Law. Both the claims deputy and the Nebraska Appeal Tribunal determined that McClemens voluntarily left his employment with United Parcel Service, Inc., without good cause, and disqualified McClemens from receiving benefits for a period of 8 weeks. Upon McClemens' appeal the district court determined that he left his employment for good cause and reversed the decision of the appeal tribunal. On appeal to this court by the Commissioner of Labor, we reverse the judgment of the district court and remand the cause for reinstatement of the decision of the appeal tribunal.

The scope of review in this court is de novo on the record from the district court. It becomes our duty to retry the issues of fact involved in the findings complained of and reach independent conclusions with respect thereto. *Taylor v. Collateral Control Corp., ante* p. 432, 355 N.W.2d 788 (1984).

Neb. Rev. Stat. § 48-628 (Cum. Supp. 1982) provides in part:

> An individual shall be disqualified for benefits:
>
> (a) For the week in which he or she has left work voluntarily without good cause, if so found by the Commissioner of Labor, and for not less than seven weeks nor more than ten weeks which immediately follow such week, as determined by the commissioner according to the circumstances in each case.

The phrase "to leave work voluntarily" has been defined as meaning " 'to intentionally sever the employment relationship with the intent not to return to, or to intentionally terminate, the employment.' " *Nuss v. Sorensen, post* p. 703, 706, 358 N.W.2d 752, 753 (1984); *Gastineau v. Tomahawk Oil Co., Limited,* 211 Neb. 537, 319 N.W.2d 107 (1982); *Powers v. Chizek,* 204 Neb. 759, 285 N.W.2d 501 (1979).

We have said, however, that leaving employment may not be

said to be without good cause if the reason for leaving, although it may appear voluntary, has some justifiably reasonable connection with or relation to the conditions of employment. *Heimsoth v. Kellwood Co.*, 211 Neb. 167, 318 N.W.2d 1 (1982); *Glionna v. Chizek*, 204 Neb. 37, 281 N.W.2d 220 (1979).

The rule of construction that the Employment Security Law is to be liberally construed in order that its beneficent purposes may be accomplished applies to the interpretation of the law but not to consideration of the evidence offered in support of a claim under the law. *Hunter v. Miller*, 148 Neb. 402, 27 N.W.2d 638 (1947). In voluntary termination cases the burden of proof is on the employee to prove that the leaving was for good cause. *Taylor v. Collateral Control Corp., supra.*

With the foregoing principles in mind, we find the following relevant facts.

McClemens, then a Gibbon, Nebraska, resident, was employed as a delivery driver for United Parcel at Kearney, Nebraska. He last worked on August 9, 1982, when he went on a 1-week vacation in Minnesota. While vacationing, he suffered a puncture knife wound of his left knee, for which he underwent surgery at the Rochester, Minnesota, Mayo Clinic on August 12, 1982. United Parcel then placed McClemens on disability status beginning at the conclusion of his vacation time.

McClemens returned to his Nebraska home, and after becoming unhappy with the progress of his knee, again went to the Mayo Clinic. On January 6, 1983, after conversing with his Mayo Clinic physician, as the result of which McClemens understood he would not be able to return to his old job, McClemens notified United Parcel that he would not be able to return to work as a delivery driver. The record contains no description of McClemens' employment duties. McClemens did not inquire whether United Parcel had some other type of work he could do, thinking instead it was United Parcel's option to offer something else if it wished. No other work was offered by United Parcel.

Between the date of the injury in August and January 6, 1983, McClemens sold his house in Gibbon and moved with his family to Minnesota.

After receiving a letter dated February 9, 1983, from the business office of the Mayo Clinic, reading, "The patient's attending surgeon stated that the patient had made maximum improvement and he would estimate the patient should be able to return to work by February 1, 1983," United Parcel paid McClemens disability benefits through February 1, 1983.

On July 29, 1983, the Mayo Clinic physician attending McClemens wrote McClemens' attorney, saying, among other things:

> We followed Mr. McClemens along as I saw him on several occasions. We saw him last on January 6, 1983. At that time he still complained of stiffness and discomfort on flexion-extension activities. His patellofemoral pain is aggravated by bending and squatting. On examination, he had mild crepitus. There were no retropatellar signs or pain on patellar pressure. There was no swelling. He had a full range of motion and good stability.

> We advised him to continue with conservative treatment for his patellofemoral chondromalacia. At that time he was considering changing jobs because this was too stressful for him, causing him too much patellofemoral irritation. We did advised [sic] him to gradually increase his activities as tolerated and continue with his strengthening program.

> We recently heard from Mr. McClemens that he was unable to regain enough function to return to his previous level of activity and return to his previous job without causing too much distress. I did advise him to seek other types of work that wound [sic] not distress his knee if he could not handle his present job.

> If a new job is required, it is best if he can avoid standing for prolonged periods and excessive walking. He should also avoid squatting and stairs.

We first address McClemens' argument that the letter from the business office of the Mayo Clinic is not competent evidence because, although it was signed by someone, it was not signed by McClemens' physician, and further because it only estimates when McClemens might be able to return to work. McClemens' concern with the admissibility of that document comes too late,

for no objection to its receipt into evidence was made before the appeal tribunal. It has long been, and continues to be, the rule that on appeal a party may not complain of evidence to which he did not object at trial. *State v. Harper*, 215 Neb. 686, 340 N.W.2d 391 (1983); *Lindgren v. City of Gering*, 206 Neb. 360, 292 N.W.2d 921 (1980); *Catron v. Shepherd*, 8 Neb. 308, 1 N.W. 204 (1879). At this point and in the state of the record, the only question is the weight to be given to the letter.

If we were to construe the ambiguous phrase in the February 9 letter, "should be able" to return to work, to mean "will be able" to return to work, the evidence would be overwhelmingly against McClemens. On the other hand, if, because of its ambiguity, we were to ignore the February 9 letter and rely solely on the physician's letter of July 29, the evidence would nonetheless fall far short of sustaining McClemens' claim that he left his employment for sound medical reasons and thus for good cause. That letter is also ambiguous, in that it states: "*[I]f* he [McClemens] could not handle his present job," and "*If* a new job is required." (Emphasis supplied.) It contains no expression that McClemens' medical condition required different employment nor any expression that he could not perform his work. While McClemens complained on January 6, 1983, of stiffness and discomfort on moving his knee, particularly on bending or squatting, he was found to have had a full range of motion and good stability. Although movement of the knee produced a mild crackling sound, he demonstrated no swelling and neither complained of pain nor demonstrated any objective signs of injury to the back of the kneecap. In short, there was little, if any, objective medical evidence to support his complaints.

Consequently, no matter how the February 9 letter is viewed, the record is devoid of any competent medical evidence which supports a finding of an inability on McClemens' part to perform his work. What is clear, as observed in *Nuss v. Sorensen, post* p. 703, 358 N.W.2d 752 (1984), is that United Parcel did nothing to force McClemens' move to Minnesota.

Under these circumstances McClemens' personal belief that he had to leave his work and move to Minnesota cannot be said

to have been with good cause.

REVERSED AND REMANDED WITH DIRECTIONS.