Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/09/2024 08:06 AM CST

Kathryn Wright, appellant, v. Southwest
Airlines Co. and Nebraska Department
of Labor, appellees.

___ N.W.2d ___

Filed February 9, 2024.    No. S-23-376.

1. **Employment Security: Judgments: Appeal and Error.** In an appeal
from the appeal tribunal to the district court regarding unemployment
benefits, the district court conducts the review de novo on the record,
but on review by the Nebraska Court of Appeals or the Nebraska
Supreme Court, the judgment of the district court may be reversed,
vacated, or modified for errors appearing on the record.
2. **Judgments: Appeal and Error.** When reviewing a judgment for errors
appearing on the record, the inquiry is whether the decision conforms to
law, is supported by competent evidence, and is neither arbitrary, capri-
cious, nor unreasonable.
3. **Employment Security: Appeal and Error.** The question of whether
an employee was "discharged for misconduct connected with his or her
work" under Neb. Rev. Stat. § 48-628.10 (Reissue 2021) is a mixed
question of law and fact.
4. ____: ____. In analyzing whether an employee was discharged for
misconduct connected with his or her work under Neb. Rev. Stat.
§ 48-628.10 (Reissue 2021), the historical facts and circumstances sur-
rounding the discharge are questions of fact, but the ultimate question
of whether, given those facts and circumstances, the employee's mis-
conduct is connected with work presents a question of law.
5. **Judgments: Appeal and Error.** An appellate court, in reviewing a
district court judgment for errors appearing on the record, will not sub-
stitute its factual findings for those of the district court where competent
evidence supports those findings.
6. ____: ____. Whether a decision conforms to law is by definition a
question of law, in connection with which an appellate court reaches a
conclusion independent of that reached by the lower court.

7. **Employment Security: Words and Phrases.** "Misconduct," for purposes of Neb. Rev. Stat. § 48-628.10 (Reissue 2021), includes behavior which evidences (1) wanton and willful disregard of the employer's interests, (2) deliberate violation of rules, (3) disregard of standards of behavior which the employer can rightfully expect from the employee, or (4) negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard of the employer's interests or of the employee's duties and obligations.

8. **Employment Security.** Misconduct connected with work is a breach of a duty owed to the employer, not to society in general.

Appeal from the District Court for Douglas County: Peter C. Bataillon, Judge. Affirmed.

Jon Rehm, of Rehm, Moore & Rehm, P.C., L.L.O., for appellant.

Gerald W. Pankonin, Katie S. Thurber, and Joel F. Green, of Nebraska Department of Labor, for appellee Nebraska Department of Labor.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Papik, J.

Southwest Airlines Co. (Southwest) terminated Kathryn Wright's employment as a customer service agent after it concluded that, in her volunteer role on a workplace social committee, she failed to keep adequate records of expenditures and spent committee funds for personal purposes. Wright's subsequent application for unemployment insurance benefits was initially granted by a Nebraska Department of Labor (DOL) adjudicator, but that decision was overturned by the DOL appeal tribunal. The district court affirmed, finding that Wright was disqualified from receiving unemployment benefits for the week of the discharge and the 14 weeks thereafter because she was terminated "for misconduct connected with . . . her work" under Neb. Rev. Stat. § 48-628.10 (Reissue

2021). Wright appeals that decision. Because she does not identify any errors appearing on the record, we affirm.

## BACKGROUND

*DOL Adjudicator Finds Wright Qualified*
*for Unemployment Benefits.*

Wright was employed as a customer service agent for Southwest. She was discharged from her employment following an internal disciplinary hearing. Wright filed a claim for unemployment insurance benefits. A DOL adjudicator conducted an investigation and issued a determination that Wright qualified for those benefits.

*DOL Appeal Tribunal Finds Wright*
*Disqualified for Benefits.*

Southwest filed an administrative appeal of the adjudicator's decision with the appeal tribunal. The matter was heard before an administrative law judge.

According to testimony at the hearing, Wright was employed as a customer service agent for Southwest at its station in Omaha, Nebraska. Her job duties included working at the ticket counter, the gate, and the baggage service office. Wright testified that on a number of occasions, she was nominated by a coworker for an award in recognition of her exemplary job performance. However, Wright was discharged from her employment following an internal hearing related to her volunteer activities on Southwest's "Culture Committee."

The appeal tribunal heard testimony that the Culture Committee was established to increase employee morale and retention at Southwest. Southwest flew Omaha employees who joined the Culture Committee to the company's headquarters and trained them to promote the company's culture; Southwest paid employees for the time they spent in this training. Members of the Culture Committee, overseen by Southwest's station manager, planned activities for employees at their respective workplaces, such as holiday parties. Occasionally, Culture Committee members did tasks for the

committee on their personal time, for which they were not paid by Southwest.

There was testimony before the appeal tribunal that Culture Committee activities were funded in part by contributions from Southwest headquarters and in part from contributions from local Southwest employees. For special events, Southwest would give the Culture Committee a certain amount of funds to use per employee. Southwest also supported the Culture Committee's efforts to fundraise from employees by allowing the Culture Committee to keep proceeds from breakroom vending machines stocked by the Culture Committee.

According to the testimony at the hearing, when Wright joined the Culture Committee, she was authorized to use the bank card for a Culture Committee account. The bank card bore the names of both Wright's supervisor and "Culture Committee." The account for the bank card was funded by the voluntary contributions of local employees. Wright's station manager testified that employee contributions to the Culture Committee were meant for "culture within the station and nothing else."

The station manager testified that in December 2021, he communicated to the Culture Committee members, including Wright, that "[t]his is money for the station" and explained the expectations for handling committee funds. He told them that they were required to keep a ledger, or "detailed documentation," of all purchases and to "keep receipts." The station manager recalled that he was "very frank with [Wright] and the rest of the people in the room, that, hey, we're not going to put ourselves in a situation where there is a question on how money was spent, or where money was spent, and what it was spent on."

The appeal tribunal heard the station manager's testimony that Wright made purchases with the Culture Committee bank card, but she did not keep a ledger of expenses as he had instructed her. The station manager also testified that when receipts were itemized at the end of February 2022, it came to

his attention that Wright had not submitted receipts for some of her purchases. The station manager approached Wright and told her that receipts were missing. Wright initially stated that she would produce the missing receipts.

The station manager testified that at a Culture Committee meeting a couple of weeks later, there was again discussion about the importance of providing receipts for all purchases; Wright, the station manager, and other committee members were present. At that meeting, Wright confirmed she would provide the missing receipts.

There was testimony that when Wright still did not submit the receipts, the station manager followed up with an email to Wright, giving her a deadline. Wright turned in some of the missing receipts, but not all of them, and she asked for an extension of the deadline due to a family emergency. The station manager sent another email extending the deadline, but Wright did not meet the extended deadline.

At that point, the station manager testified, he issued a notice of hearing to address the missing receipts and misuse of company funds. The station manager recalled that at the internal hearing, Wright admitted to using the Culture Committee card to renew her personal Sam's Club membership, which was required to shop at the store. He also recalled that Wright admitted to using the Culture Committee card to purchase groceries for her personal use. At the internal hearing, Wright turned in receipts for those expenditures and offered reimbursement. According to the station manager, "we were not aware of the misappropriation of funds until the [internal] hearing occurred, because there [were] approximately . . . 10 receipts that we did not have for us to validate the purchases that were made from the account."

Of the receipts that Wright turned in, one confirmed that Wright had used the committee's bank card to renew her personal membership to Sam's Club for $35 in January 2022. Testimony before the appeal tribunal established that Wright did this without asking for permission and did not

ask Southwest to pay for a membership. The station manager testified that, given the purposes for the funds in the Culture Committee account, Wright was not "allowed" to use those funds to renew her personal membership.

With respect to another receipt that Wright submitted, she noted that she had used the Culture Committee card to purchase personal groceries at Sam's Club in February 2022, totaling approximately $60. Wright testified before the appeal tribunal that she had also purchased Culture Committee items during the same shopping trip and had mistakenly used the Culture Committee card for her own groceries as well. The station manager testified Wright's claim of a mistake was not previously brought to his attention.

According to the station manager, after the internal hearing, Southwest terminated Wright's employment. He recalled that he did not ask Wright to pay back the Culture Committee funds she had used for personal expenses because "the trust had been broken," and "it was best to just move on and [part] ways."

After hearing this testimony, the appeal tribunal reversed the adjudicator's determination. It found that Wright should be disqualified for unemployment benefits for the week of her termination and for 14 weeks thereafter under § 48-628.10 because she was discharged for misconduct connected with her work.

*District Court Affirms, Finding Wright*
*Disqualified for Benefits.*

Wright appealed to the district court. She claimed that the appeal tribunal erred in finding that she committed misconduct and in finding that the alleged misconduct was in connection with her employment. At a hearing, the district court received the bill of exceptions from the appeal tribunal and took judicial notice of the court file.

The district court recited findings largely consistent with the facts above and the governing legal principles. It affirmed

the appeal tribunal's decision that under § 48-628.10, Wright was disqualified from receiving unemployment benefits for the week of the discharge and the 14 weeks that followed.

The district court reasoned that Wright had committed misconduct based on three independent grounds. First, the district court found that Wright engaged in misconduct when she violated Southwest's rule requiring employees making purchases for the Culture Committee to keep a ledger and maintain supporting documentation for all expenses. Second, the district court found that Wright's use of the Culture Committee bank card to renew her personal membership to Sam's Club without authorization was misconduct. Third, the district court found that Wright committed misconduct in using the Culture Committee bank card to purchase personal groceries.

The district court also determined that Wright's misconduct was connected with her work. Observing that the Culture Committee was "a program of the employer," the district court continued:

> Misconduct that occurs as part of an event or program that is designed to benefit the employer/employees is connected to work, even if it is outside the course of the employee's job duties. Wright only had an opportunity to serve on the Culture Committee and access its funds because of her employment with Southwest. Wright's misconduct directly harmed the interests of Southwest and breached a duty owed to her employer, rather than just a duty owed to society generally.
>
> While Wright emphasizes that the specific funds in the account that she misspent were donated by co-workers, not provided by Southwest, this does not undermine the conclusion that her conduct was connected to her work. The funds were raised within an employer-sponsored program. Moreover, because employers have a legitimate interest in the workplace environment, courts readily find that misconduct targeted at co-workers is connected to the work.

The district court concluded, "Because Wright's conduct occurred within the context of an employer-sponsored committee and caused harm to Southwest and its employees, Wright's misconduct is connected to her work within the meaning of . . . § 48-628.10."

Wright appeals.

## ASSIGNMENT OF ERROR

Wright assigns that the district court erred in finding that she committed disqualifying misconduct in connection with her employment.

## STANDARD OF REVIEW

[1,2] In one sense, our standard of review in this matter is well-established, yet, in another, it is not. It is well-established that in an appeal from the appeal tribunal to the district court regarding unemployment benefits, the district court conducts the review de novo on the record, but on review by the Nebraska Court of Appeals or the Nebraska Supreme Court, the judgment of the district court may be reversed, vacated, or modified for errors appearing on the record. See *Pinnacle Bancorp v. Moritz*, 313 Neb. 906, 987 N.W.2d 277 (2023). It is similarly well-established that when reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. See *id.*

While our overarching standard of review in this matter is clear, there is some uncertainty whether a determination that an employee was "discharged for misconduct connected with his or her work," for purposes of § 48-628.10, is a determination of law, fact, or a mixed determination of law and fact. As a recent dissenting opinion from a member of this court observed, aside from one cursory (and conclusory) assertion in *Smith v. Sorensen*, 222 Neb. 599, 386 N.W.2d 5 (1986)—that whether conduct constitutes misconduct under the unemployment security statutes is a question of fact—we do not

appear to have addressed the issue. See *Pinnacle Bancorp v. Moritz, supra* (Cassel, J., dissenting). And, as the aforementioned dissenting opinion explained, the nature of the determination is consequential, as its resolution determines the degree of deference an appellate court owes to the district court. See *id*. We thus believe it appropriate to consider that issue here.

[3] We agree with the recent dissenting opinion's conclusion that the question of whether an employee was "discharged for misconduct connected with his or her work" is a mixed question of law and fact. The question requires an analysis that involves a determination of relevant historical facts and circumstances but also the application, to those facts and circumstances, of recognized legal standards that define what it means for an employee to be "discharged for misconduct connected with his or her work." See, also, *State v. Hammond, ante* p. 362, 996 N.W.2d 270 (2023) (explaining analytical framework for mixed question of law and fact in context of consent to search case).

[4] We thus conclude that in analyzing whether an employee was discharged for misconduct connected with his or her work, the historical facts and circumstances surrounding the discharge are questions of fact, but the ultimate question of whether, given those facts and circumstances, the employee's misconduct is connected with work presents a question of law. See *Pinnacle Bancorp v. Moritz, supra* (Cassel, J., dissenting) (absent dispute regarding relevant facts, whether employee's misconduct was connected with work is question of law). To the extent language in *Smith v. Sorensen, supra*, suggests that a determination that an employee was "discharged for misconduct connected with his or her work" is solely a determination of fact, it is disapproved.

[5,6] It follows that review of a district court's findings of historical fact in a case like this will be entitled to more deference than a district court's ultimate conclusion that an employee was discharged for misconduct connected

to his or her work. An appellate court, in reviewing a district court judgment for errors appearing on the record, will not substitute its factual findings for those of the district court where competent evidence supports those findings. *Pinnacle Bancorp v. Moritz*, 313 Neb. 906, 987 N.W.2d 277 (2023). Whether a decision conforms to law is by definition a question of law, in connection with which an appellate court reaches a conclusion independent of that reached by the lower court. *Id.* With the governing standard of review established, we turn to the merits of Wright's appeal.

## ANALYSIS

In Nebraska, unemployment benefits are governed by statute. See Neb. Rev. Stat. §§ 48-601 to 48-683 (Reissue 2021). Wright contends that the district court erred in finding her disqualified for benefits as set forth in § 48-628.10(1). That subsection provides that "[a]n individual shall be disqualified for benefits for the week in which he or she has been discharged for misconduct connected with his or her work, if so found by the commissioner [of labor], and for the fourteen weeks immediately thereafter." § 48-628.10(1). The employer has the burden of proving misconduct connected with the employee's work. See *Pinnacle Bancorp v. Moritz, supra*.

Wright argues both that she did not commit any misconduct that would disqualify her under § 48-628.10(1) and that, even assuming she committed misconduct, it was not connected with her work. We address both arguments below, beginning with whether the district court erred by finding that Wright engaged in disqualifying misconduct.

*Misconduct.*

[7] Section 48-628.10 does not define "misconduct," but we have long said that it includes behavior which evidences (1) wanton and willful disregard of the employer's interests, (2) deliberate violation of rules, (3) disregard of standards of behavior which the employer can rightfully expect from the employee, or (4) negligence which manifests culpability,

wrongful intent, evil design, or intentional and substantial disregard of the employer's interests or of the employee's duties and obligations. See *Pinnacle Bancorp v. Moritz, supra.*

Wright advances three arguments to support her position that the district court erred in finding she engaged in misconduct under § 48-628.10(1). First, she contends that any alleged misconduct should be weighed against certain "mitigating factors," namely that she volunteered on the Culture Committee to benefit her fellow employees and that she had been recognized for her good work as a customer service agent. Brief for appellant at 6. Second, she claims that purchasing the Sam's Club membership was a mere mistake in judgment and therefore not misconduct. Finally, Wright asserts that her purchase of personal groceries was not misconduct because it was only negligent. We are not persuaded that Wright has demonstrated reversible error.

We first address Wright's suggestion that any misconduct should be weighed against her job performance and the fact that she volunteered to work on the Culture Committee without pay. Here, Wright argues that we should import one factor from a seven-factor analysis some arbitrators have used to assess whether employment was terminated for just cause under a collective bargaining agreement. See *City of Omaha v. Professional Firefighters Assn.*, 309 Neb. 918, 963 N.W.2d 1 (2021). Wright claims that the consideration of "mitigating factors" would "lead the court to conclude that her conduct was not severe enough to warrant a disqualification of benefits." Brief for appellant at 6.

We find no support for Wright's argument that "mitigating factors" must be considered in determining whether an employee was discharged for disqualifying misconduct. Whether an employee is entitled to unemployment benefits is procedurally and substantively distinct from an arbitrator's assessment of termination for just cause under a collective bargaining agreement. As we have observed, entitlement to unemployment benefits is a statutory question in Nebraska,

and Wright fails to point to anything in the language of § 48-628.10 or in cases interpreting the statute that supports the sort of balancing analysis she proposes. To the contrary, under § 48-628.10(1), an employee is disqualified from benefits if "he or she has been discharged for misconduct connected with his or her work"; the quality of the employee's past service, paid or volunteer, is not mentioned as a relevant consideration.

Having determined that the district court was not obligated to consider "mitigating factors" in determining whether Wright was discharged for disqualifying misconduct under § 48-628.10, we conclude that it is unnecessary to consider her remaining arguments that she did not commit disqualifying misconduct. Recall that the district court found *three* independent acts of misconduct: (1) Wright's violation of Southwest's rule that she keep a ledger and maintain supporting documentation for all Culture Committee expenditures, (2) Wright's renewal of her personal Sam's Club membership with Culture Committee funds, and (3) Wright's purchase of groceries with Culture Committee funds for her personal use. Wright makes arguments that the district court erred by finding that the latter two acts constituted disqualifying misconduct, but aside from her general contention that any alleged misconduct should have been balanced against "mitigating factors," Wright makes no argument that the district court erred in determining that her failure to keep a ledger and maintain documentation of Culture Committee spending was misconduct.

We thus see no basis upon which we could reverse the district court's determination that Wright's failure to keep a ledger and maintain supporting documentation constituted disqualifying misconduct under § 48-628.10(1). See *Uhrich & Brown Ltd. Part. v. Middle Republican NRD, ante* p. 596, 998 N.W.2d 41 (2023) (to be considered by appellate court, alleged error must be both specifically assigned and specifically argued). And, as we will explain in the next section, we

find no error in the district court's determination that Wright's failure to keep a ledger and maintain supporting documentation was connected with her work.

*Connected With Work.*

On the issue of whether any misconduct was connected with her work, Wright acknowledged at oral argument that she does not dispute the district court's findings of fact. Relevant to its decision that Wright's misconduct was connected with her work, the district court made factual findings that the misconduct occurred in the context of a committee or program Southwest sponsored, that the funds Wright spent were donated by Wright's coworkers within that program, that the Culture Committee was designed to benefit Southwest and its employees, and that Southwest gave Wright the opportunity to serve on the Culture Committee and to access the committee's funds only because she was Southwest's employee.

While Wright does not quibble with these factual findings, she does contest the district court's determination that these facts, taken together, demonstrate a connection with her work within the meaning of § 48-628.10. That, as we concluded above, is a legal determination and thus reviewed de novo.

[8] We have acknowledged that there is no statutory definition for "connected with [the employee's] work" as it is used in § 48-628.10 and that we have not set forth a list of elements or an explicit definition for the phrase. See *Pinnacle Bancorp v. Moritz*, 313 Neb. 906, 987 N.W.2d 277 (2023). But we have noted that some of the elements of our test for "misconduct" describe some connection to the employer's interests. *Id.* And we have said that misconduct connected with work is a breach of a duty owed to the employer, not to society in general. *Id.* We have further held that "general misconduct totally divorced from an employee's job or not in any way related to his or her employment" is not misconduct justifying denial of benefits. See *Poore v. City of Minden*, 237 Neb. 78, 86, 464 N.W.2d 791, 796 (1991).

Wright offers multiple reasons why any misconduct on her part was not connected with her work. She argues that the alleged misconduct was not related to her employment because it occurred while she was working in a volunteer capacity for the Culture Committee and not as part of her job as a customer service agent. Relatedly, she emphasizes that the funds she spent and failed to adequately account for were not Southwest funds but funds contributed by her coworkers. Finally, she argues that the district court erred by failing to construe the connection to work requirement in favor of Wright's entitlement to benefits.

We are not persuaded by Wright's attempt to detach her activities on the Culture Committee from her work. Even though Wright's duties on the Culture Committee were different from her paid job duties as a customer service agent, it was Wright's employment with Southwest that gave her the opportunity to serve on the Culture Committee in the first place.

Neither does the fact that Culture Committee funds were contributed by Wright's coworkers disrupt the connection to work; instead, it reinforces it. The funds may have been contributed by Southwest employees, but they were contributed *to* a committee that Southwest organized, promoted, supported, and regulated. Southwest did so as part of an attempt to build employee morale. That same concern for employee morale provided Southwest with a reason to implement rules that were designed to ensure that funds donated to the Culture Committee were, in fact, spent for Culture Committee purposes. As the station manager testified, Southwest demanded that Culture Committee members keep a ledger and maintain supporting documentation because Southwest did not want "to put [itself] in a situation where there is a question on how money was spent, or where money was spent, and what it was spent on." Southwest had an interest in these rules being followed, and a failure to follow them would harm Southwest, as opposed to society in general.

Finally, as for Wright's argument that the district court should have construed the connection to work requirement in favor of Wright's entitlement to benefits, Wright is correct that we have said that the Employment Security Law is to be liberally construed so that its beneficent purpose of paying benefits to involuntarily unemployed workers may be accomplished. See *Pinnacle Bancorp v. Moritz*, 313 Neb. 906, 987 N.W.2d 277 (2023). But even assuming that the connection to work requirement of § 48-628.10 should be construed in favor of paying benefits, we see no error. No amount of "construction" could permit a conclusion that Wright's failure to follow her employer's rules for accounting for money contributed by her coworkers to a committee organized by her employer to promote workplace morale was not, in the language of § 48-628.10, "connected with . . . her work." Because the undisputed facts demonstrate a connection with Wright's work within the meaning of § 48-628.10, the district court's resolution of the issue conformed to the law.

### CONCLUSION

Finding no errors appearing on the record, we affirm.

Affirmed.