Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/10/2025 09:10 AM CST

Matthew I. Ortega, appellant, v.
John Albin, Commissioner of Labor,
et al., appellees.

___ N.W.3d ___

Filed January 10, 2025.    No. S-24-020.

1. **Employment Security: Judgments: Appeal and Error.** In an appeal from the appeal tribunal to the district court regarding unemployment benefits, the district court conducts the review de novo on the record, but on review by the Nebraska Court of Appeals or the Nebraska Supreme Court, the judgment of the district court may be reversed, vacated, or modified for errors appearing on the record.

2. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

3. ____: ____. Whether a decision conforms to law is by definition a question of law, in connection with which an appellate court reaches a conclusion independent of that reached by the lower court.

4. **Employment Security: Intent: Words and Phrases.** The phrase "to leave work voluntarily" means to intentionally sever the employment relationship with the intent not to return to, or to intentionally terminate, the employment.

5. **Employment Security: Good Cause.** It cannot be said that leaving employment is without good cause if the reason for leaving, although it may appear voluntary, has some justifiably reasonable connection with or relation to the conditions of employment.

6. ____: ____. If an employee accepts employment in good faith and through no fault or deficiency on his or her part, the workload becomes an increasingly unreasonable burden so as to affect the health or sense of well-being of the employee, voluntary termination does have some justifiably reasonable connection with or relation to conditions of employment and may be deemed for "good cause" under Neb. Rev. Stat. § 48-628.12(1)(a) (Reissue 2021).

7. **Employment Security: Proof: Good Cause.** In voluntary termination cases, the burden of proof is on the employee to prove that the employee's leaving was for good cause.

Appeal from the District Court for Hall County, John H. Marsh, Judge. Affirmed.

Mark T. Bestul, of Legal Aid of Nebraska, for appellant.

Gerald W. Pankonin, Katie S. Thurber, Joel F. Green, and Jacob H. Winters, of Nebraska Department of Labor, for appellees John Albin and Nebraska Department of Labor.

Funke, C.J., Miller-Lerman, Cassel, Stacy, Papik, and Freudenberg, JJ.

Funke, C.J.

## I. INTRODUCTION

An employee appealed the denial of his request for unemployment benefits, which he had applied for after voluntarily quitting his job due to work-related stress. The Nebraska Department of Labor's Appeal Tribunal (Appeal Tribunal) and the district court for Hall County, Nebraska, found that the employee had not presented sufficient evidence to support a finding of good cause, as required by statute. We affirm.

## II. BACKGROUND

Matthew I. Ortega began his employment with a towing company, commonly known as Island Towing, in January 2006. There, he worked as an office manager under the direct supervision of the business' owner, Chloe Aguilar. Ortega worked in this position for roughly 17 years before providing his 90-day notice and voluntarily quitting on December 31, 2022.

### 1. Application for and Denial
### of Unemployment Benefits

On January 4, 2023, following his last day at Island Towing, Ortega filed an application for unemployment benefits with

the Nebraska Department of Labor (the Department). On the application, Ortega provided the following rationale:

> I quit my job [b]ecause of mental health conditions that [were] preventing me from completing . . . my job 100%. Quitting helped me protect my mental health and to escape that violence that ate at me internally day after day. There [have] been days that I could not sleep[.] I would hyperventilate when I would have to deal with the individual or individuals. I put NO blame on my employer as this was beyond their control it was just unfortunate that[] the situation could never be corrected.

The Department denied the request, finding that Ortega did not have good cause to quit his job and that he therefore had not met the statutory requirements necessary to qualify for unemployment benefits.

## 2. Appeal Tribunal

Ortega appealed the denial to the Appeal Tribunal. At the hearing before the Appeal Tribunal, both Ortega and his supervisor, Aguilar, testified.

### (a) Ortega's Testimony

Ortega explained that as office manager, he fielded calls from angry customers and had frequently been "verbally abused [and] verbally accused [and it] just [got] mentally draining." However, it was not these interactions that bothered Ortega. He testified that instead, his stress stemmed from interactions with "the people with authority over [him]." Ortega testified that he quit because of negative interactions with the local sheriff and police departments, collectively referred to as "law enforcement." On this point, Ortega's testimony detailed two incidents where Island Towing had towed an unmarked police vehicle. Ortega testified that in one instance, occurring roughly 2½ years prior to the hearing, the captain of the police department telephoned Ortega, screamed at him, and threatened to have him arrested for towing the vehicle. Ortega also

detailed an analogous, albeit less severe, incident that occurred at an unspecified time.

Even beyond those two incidents, Ortega explained that he had to deal with law enforcement on a nearly monthly basis and that although not all interactions were negative, each interaction still caused him to "shake, hyperventilate [and] feel sick to [his] stomach." He further explained that the stress from these interactions would bother him all day and that it stressed him "more . . . than it should." Ortega testified that these conditions, and the stress they caused, inhibited him from completing his work. He elaborated, saying, "I'm there to do my job a hundred and ten percent. And, by having these issues, I couldn't do it anymore. So, I mean, to me, why am I going to stick around when I cannot do my work anymore based off those facts?"

Ortega's testimony detailed the facts that he had informed Aguilar of each incident and that she had tried to address the matters with law enforcement, but that these complaints had been unsuccessful. Ortega also lamented that "there [was] no way to relieve stress at work . . . . If [Aguilar] could have fixed it, she would have fixed it." He further explained that he was on call for Island Towing 24 hours per day, 7 days a week, so there was no way for him to get away from the stress, even if he was not in the office.

When asked by the Appeal Tribunal whether he had sought the care of a doctor or mental health professional because of his stress, Ortega denied having sought such help.

### (b) Aguilar's Testimony

During her testimony, Aguilar confirmed Ortega's description of events with law enforcement saying, "There's actually more than what he's told you. . . . [I]t's absolutely ridiculous. . . . [T]hey're ongoing. . . . I don't know how to fix it. . . . He is one hundred percent correct."

Aguilar testified that Ortega was not the only one in the business who had experienced difficulties with law enforcement,

although he handled the brunt of those incidents. She explained how she had previously hired lawyers to aid in resolving the situation, but that the lawyers had been "shut down" by law enforcement. Aguilar also testified that she was working on filing a complaint with the sheriff's department at the time of the hearing. Based on the previous failed attempts to resolve the situation and alleviate stress, however, Aguilar concluded, "[T]here is no way to relieve [stress]. . . . You don't."

When asked whether she believed Ortega had a legitimate reason for quitting, she stated, "Oh, absolutely." Aguilar explained that in 2018, the stress had so impacted her, as well, that she took a break from her business and left Ortega in charge for a couple months.

### (c) Decision of Appeal Tribunal

After the hearing, the Appeal Tribunal affirmed the denial of unemployment benefits for Ortega. Although the Appeal Tribunal agreed that Ortega's complaints were "substantial" and that they did relate to his work conditions, it nonetheless concluded that Ortega had not presented evidence sufficient to meet his burden of proof. The Appeal Tribunal held that because Ortega's work-related stress was a health issue, it necessitated substantiating medical documentation and a showing that alternative avenues for relieving the stress had been pursued before quitting. Since such evidence was not provided, the Appeal Tribunal determined Ortega did not have good cause to terminate his employment.

Ortega appealed to the district court.

### 3. District Court Order

Largely following the reasoning of the Appeal Tribunal, the district court concluded that Ortega did not have good cause to voluntarily quit his job, and it therefore affirmed the denial of benefits. In its opinion, the district court defined Ortega's stress as a "health concern." As such, the court held that medical documentation must be provided to carry Ortega's burden of proof. The district court also reiterated the sentiment from

the Appeal Tribunal that Ortega had failed to preserve the employer-employee relationship by not sufficiently pursuing alternative avenues, such as a leave of absence or a modification of his job duties, so as to limit his contact with law enforcement.

Ortega appealed this decision, and we moved the matter to our docket.[1]

## III. ASSIGNMENTS OF ERROR

Ortega assigns, restated, that the district court erred in (1) affirming the Appeal Tribunal's decision that Ortega voluntarily quit his employment without good cause, (2) requiring medical evidence to substantiate Ortega's work-related stress, and (3) determining that Ortega failed to preserve the employer-employee relationship.

## IV. STANDARD OF REVIEW

[1] In an appeal from the appeal tribunal to the district court regarding unemployment benefits, the district court conducts the review de novo on the record, but on review by the Nebraska Court of Appeals or the Nebraska Supreme Court, the judgment of the district court may be reversed, vacated, or modified for errors appearing on the record.[2]

[2] When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[3]

[3] Whether a decision conforms to law is by definition a question of law, in connection with which an appellate court reaches a conclusion independent of that reached by the lower court.[4]

---

[1] See Neb. Rev. Stat. § 24-1106 (Cum. Supp. 2024).

[2] *Wright v. Southwest Airlines Co.*, 315 Neb. 911, 2 N.W.3d 186 (2024).

[3] *Id*.

[4] *Id*.

## V. ANALYSIS

There is no question in this case that Ortega left his work voluntarily and that he did so because of work-related stress stemming from interactions with law enforcement. As detailed above, Ortega assigns three separate errors. We need not reach the merits of the last two assignments, regarding the requirements to present medical documentation and to take steps to preserve the employer-employee relationship, because the issue of good cause is dispositive. Therefore, we also do not detail the parties' arguments on those points. Assuming without deciding that there are no such requirements, the district court cannot be said to have erred in affirming the denial of benefits because the record shows that Ortega failed to satisfy his burden of proof that there was good cause for leaving his employment.

### 1. Legal Framework

[4-6] Neb. Rev. Stat. § 48-628.12 (Reissue 2021) provides as follows: "An individual shall be disqualified for benefits . . . [f]or the week in which he or she has left work voluntarily without good cause, if so found by the commissioner, and for the thirteen weeks immediately thereafter." The phrase "to leave work voluntarily" means to intentionally sever the employment relationship with the intent not to return to, or to intentionally terminate, the employment.[5] Neb. Rev. Stat. § 48-628.13(12) (Reissue 2021) provides that good cause can be found when, among other things, "[e]quity and good conscience demand a finding of good cause." We have also explained that it cannot be said that leaving employment is without good cause if the reason for leaving, although it may appear voluntary, has some justifiably reasonable connection with or relation to the conditions of employment.[6] For example, if an employee accepts employment in good faith and

---

[5] *McClemens v. United Parcel Serv.*, 218 Neb. 689, 358 N.W.2d 748 (1984).

[6] *Id*. (citing *Glionna v. Chizek*, 204 Neb. 37, 281 N.W.2d 220 (1979)).

through no fault or deficiency on his or her part, the workload becomes an increasingly unreasonable burden so as to affect the health or sense of well-being of the employee, voluntary termination does have some justifiably reasonable connection with or relation to conditions of employment and may be deemed for good cause.[7] However, we have never held that general and subjective dissatisfaction with one's employment is good cause; one's reasons for termination must be "necessitous and compelling."[8]

[7] In voluntary termination cases, the burden of proof is on the employee to prove that the employee's leaving was for good cause.[9]

### 2. Parties' Arguments

Ortega asserts that under § 48-628.13(12), equity and good conscience permit a finding of good cause in this case. Ortega argues that he had good cause to quit because the negative interactions with law enforcement had stressed him to the point that his mental health suffered, making his employment conditions an increasingly unreasonable burden. Ortega points to his testimony that this stress caused him to hyperventilate, shake, and feel sick to his stomach. Ortega further points to his and Aguilar's testimony that this stress occurred through no fault of his own and that it could not be mitigated. Accordingly, Ortega would have us conclude that the interactions with law enforcement created stress which affected his health or sense of well-being such that his employment had become an increasingly unreasonable burden sufficient to establish good cause.

Conversely, the Department argues that Ortega has not met his burden of establishing good cause, because his reasons

---

[7] *Glionna, supra* note 6.

[8] See *id*. at 38, 281 N.W.2d at 222. See, also, *Stackley v. State*, 222 Neb. 767, 386 N.W.2d 884 (1986).

[9] See *McClemens, supra* note 5.

for voluntarily quitting were not necessitous and compelling. More specifically, the Department asserts that there is insufficient evidence to conclude that the conditions of Ortega's employment were sufficiently harmful to his health or sense of well-being such that his workload can be said to have become an increasingly unreasonable burden. It points to the facts that Ortega continued working at Island Towing for 2½ years after the alleged incident with law enforcement and that he was able to give a 90-day notice of his intent to resign as proof that there was a lack of necessity and compulsion for Ortega to leave his job. This overarching lack of urgency, the Department argues, shows that Ortega's proffered reasons do not establish good cause.

### 3. Ortega Has Not Met His Burden
### of Establishing Good Cause

Based on the record in this case, we cannot conclude that the district court erred in determining that Ortega failed to prove good cause for leaving his employment. Accordingly, we also cannot conclude that the decision does not conform to law, is not supported by competent evidence, or is arbitrary, capricious, or unreasonable, because Ortega has failed to meet his burden of proof.

The record before the district court provided few facts relating to both the number and the substance of Ortega's interactions with law enforcement, making it difficult to assess the burdensomeness of his work conditions. Generally speaking, Ortega made statements to the effect that his interactions with law enforcement took place "frequently" and "all the time" and that there were "too many" such interactions to keep track of. Despite this, Ortega's testimony provided details relating to only two events. As explained above, both incidents dealt with occasions when Island Towing had towed an unmarked police vehicle. In the first instance, once having discovered that the vehicle had been towed, a law enforcement officer allegedly screamed at Ortega and threatened to have him arrested. Of

that event, Ortega testified, "[T]hat day was the day that just . . . eats at my mental health." When asked whether the officer had ever threatened him again, Ortega admitted, "Never." This singular interaction was estimated to have taken place 2½ years prior to the hearing before the Appeal Tribunal.

Of the second event, however, Ortega did not describe it as a negative interaction. Instead, he stated, "[T]hat supervisor handled it really professionally, and they just sent somebody to pick [the vehicle] up." Ortega did not recall when this event took place.

Aguilar's testimony generally confirmed Ortega's narrative. She testified that such incidents were "ongoing" and that there were "more than what he's told you." Aguilar's testimony did not, however, mention any dates or the substance of any of the interactions. Aguilar did mention that she was in the process of filing a complaint with the sheriff's department at the time of the hearing before the Appeal Tribunal, but the record does not clarify whether the complaint was in regard to incidents involving Ortega, or if the complaint related to separate events.

Relying on the evidence presented, the district court concluded that Ortega had provided specific details relating to only one hostile and threatening interaction with law enforcement. Even assuming there were other negative interactions with law enforcement, the district court was not provided with any information regarding them, thereby limiting their relevance. Further, the district court noted that the singularly detailed negative interaction occurred roughly 2½ years prior to Ortega's voluntary termination and subsequent hearing.

As mentioned, the burden of proof in this case rests on Ortega; it is his burden to present evidence sufficient to support a finding of good cause. Based on the record detailed above, however, we cannot say that the district court erred in finding that Ortega failed to meet his burden.

## VI. CONCLUSION

Because the district court did not err in finding that Ortega failed to meet his burden to show that he voluntarily left his employment for good cause, we affirm the district court's judgment denying unemployment benefits to Ortega.

Affirmed.